## SAMUEL HARRIS v. KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant.

Division One, May 31, 1913.

1. **NEGLIGENCE: Claw-Bar: Proximate Cause of Injury: Plaintiff's Negligence.** Whether or not the broad rule that the master must furnish his servant a reasonably safe tool with which to work applies to simple appliances, the servant cannot recover where the tool was a claw-bar used in drawing spikes from railroad ties, and he had used it on ten spikes before his injury, each time it slipped off of the spike four or five times, at each time he was assisted by a co-employee and he did not fall, and with this knowledge he threw his whole weight on the claw-bar, without waiting for his co-employee,

and it slipped and he fell and was hurt; for, under the circumstances, his throwing his whole weight on it was negligence and the proximate cause of his injury.

2. ————: **Concurring Negligence.** Plaintiff cannot recover where his own negligence in the use of the tool combines with the negligence of his employer in furnishing him a defective tool.

3. ————: **Contributory: Made to Appear by Plaintiff's Testimony.** Where plaintiff's contributory negligence is made to appear by his own testimony, the character of defendant's pleadings is not material.

Appeal from Newton Circuit Court.—*Hon. F. C. Johnston,* Judge.

REVERSED.

*Cyrus Crane* and *O. L. Cravens* for appellant.

(1)   When a servant has a choice of two ways of performing his labor, one safe, and the other risky, which latter he voluntarily chooses, such choice is contributory negligence precluding recovery for the resulting injury. Montgomery v. Railroad, 109 Mo. App. 88; Moore v. Railroad, 146 Mo. 572; Smith v. Box Co., 193 Mo. 715; Pauck v. Beef Co., 159 Mo. 639; Holmes v. Brandenbaugh, 172 Mo. 66; Anderson v. Box Co., 103 Mo. App. 382; Sparks v. Railroad, 31 Mo. App. 111; Haviland v. Railroad, 172 Mo. 106; Hurst v. Railroad, 163 Mo. 309; Towner v. Railroad, 52 Mo. App. 648. (2) Even if the claw-bar was defective and unsuitable, plaintiff knew such fact, or it was a fact perfectly obvious to his senses, and, having continued its use thereafter, he assumed the risk of injury therefrom. 1 Labatt on Master & Serv., sec. 154; 1 Bailey on Per. Inj. Relating to Master & Serv., sec. 503; Martin v. Highland P. M. Co., 128 N. C. 265; Webster M. Co. v. Nisbett, 205 Ill. 273; Cregan v. Marston, 126 N. Y. 568; Marsh v. Chickering, 101 N. Y. 396; Relyea v. Tomahawk P. & P. Co., 110 Wis. 307; Garnett v.

Bridge Co., 98 Fed. 194; Railroad v. Minnick, 61 Fed. 635; 20 Am. & Eng. Ency. Law (2 Ed.), 89; Hefferen v. Railroad, 45 Minn. 471; Miller v. Railroad, 47 N. Y. Supp. 285; Lynn v. Glucose Co., 104 N. W. (Iowa), 597; Corcoran v. Gas. Co., 81 Wis. 191; Holt v. Railroad, 94 Wis. 596; Borden v. Mill Co., 98 Wis. 402; Olson v. Lumber Co., 102 Wis. 264; Steinhauser v. Spraul, 127 Mo. 541; Post v. Railroad, 121 Mo. App. 562; Anderson v. Box Co., 103 Mo. App. 302; Bohn v. Railroad, 106 Mo. 429; Nicholds v. Plate Glass Co., 126 Mo. 55; Berning v. Medart, 56 Mo. App. 443; Devitt v. Railroad, 50 Mo. 302; Harf v. Green, 168 Mo. 308; Covey v. Railroad, 86 Mo. 635; Hurst v. Railroad, 163 Mo. 309; Shea v. Railroad, 76 Mo. App. 29; Lucey v. Oil Co., 129 Mo. 32.

*M. E. Benton* and *Horace Ruark* for respondent.

(1) "That the master's duty is to furnish his servant with reasonably safe tools and appliances with which to do his work and to use reasonable care to keep such tools and appliances in a safe condition has been so often ruled by the appellate courts as to become axiomatic." Huth v. Dobble, 76 Mo. App. 671; Lee v. Railroad, 112 Mo. App. 372; Curtis v. McNair, 173 Mo. 270; Franklin v. Railroad, 97 Mo. App. 473; Bohn v. Railroad, 106 Mo. 429; Huth v. Doble, 76 Mo. App. 671; Beard v. Car Co., 72 Mo. App. 583; Siela v. Railroad, 82 Mo. 430; Covey v. Railroad, 86 Mo. 641; Fouts v. Swift Co., 113 Mo. App. 526. (2) The servant does not assume the risk arising from the master furnishing defective tools and appliances, though the use of such tools may raise a question of contributory negligence upon the part of the servant. Graci v. Constitution Co., 121 Mo. App. 709; Brady v. Railroad, 206 Mo. 509; Smith v. Kansas City, 125 Mo. App. 150; Cole v. Transit Co., 193 Mo. 81; Pauck v. Dressed Beef Co., 159 Mo. 467. "It is the established rule, that

if the situation is not so glaring and imminently dangerous as to threaten immediate injury, or if it is such that it would appear to a reasonably prudent person that he might continue in the service with safety to himself by exercising care on his part, a recovery for the resulting injury is not barred as a matter of law under the doctrine of contributory negligence. The mere fact of the servant's knowledge that there is some danger is not sufficient to defeat his right unless that knowledge discloses imminent and immediate danger which a reasonably prudent man should know could not be averted by the exercise of care.'' And unless the danger is so threatening and glaring the matter of the defendant's contributory negligence is always for the jury. Graci v. Construction Co., 124 Mo. App. 719; Pippen v. Railroad, 196 Mo. 321; Obermeyer v. Chair Co., 120 Mo. App. 59; Charlton v. Railroad, 200 Mo. 413; Butz v. Construction Co., 199 Mo. 279; Daken v. Chase & Son, 197 Mo. 238; Lee v. Railroad, 195 Mo. 400; Shepard v. Transit Co., 189 Mo. 362; Warren v. Railroad, 113 Mo. App. 498; Kielty v. Construction Co., 121 Mo. App. 58; Clippard v. Transit Co., 202 Mo. 432; Solder v. Railroad, 100 Mo. 673. And in order to defeat recovery the servant must know and appreciate the danger. Parsons v. Packing Co., 96 Mo. App. 372; Studenroth v. Packing Co., 106 Mo. App. 480. The fact that the work is done in the presence of and under the immediate direction of the master's foreman is equivalent to an assurance that the servant may safely proceed with it; he is not bound in such case to search for danger, but may rely for his safety upon the judgment and conduct of the foreman. Smith v. Kansas City, 125 Mo. App. 157; Herdler v. Stove & Range Co., 136 Mo. 3; Sullivan v. Railroad, 107 Mo. 66. Where ordinarily there is no danger in the servant adopting one of two ways he cannot be held negligent in so doing. Benedict v. Railroad, 104 Mo. App. 218. (3) The question of plaintiff's contributory negligence must be

determined from a ''view of the whole evidence in the most favorable aspect it presents in behalf of plaintiff.'' Myers v. Transit Co., 99 Mo. App. 369. There is a presumption that the person injured was careful and not negligent. Rogers v. Printing Co., 103 Mo. App. 683. And the burden of proving contributory negligence rests upon the defendant. Riska v. Depot Co., 180 Mo. 169. Where ordinarily there is no danger in the servant adopting one of two ways he cannot be held negligent in so doing. Benedict v. Railroad, 104 Mo. App. 218. (4) The doctrine of non-liability where the master furnishes a defective tool or appliance that is simple and easily understood, has never obtained in Missouri. Warner v. Railroad, 62 Mo. App. 184. This court has held the master liable for the furnishing of a ladder with a rotten or defective rung. Huth v. Dobble, 74 Mo. App. 671. Where the servant was injured by the use of a defective and ordinary board used to unload barrels from a wagon. Beard v. Car Co., 72 Mo. App. 671. A defective rope: Reeder v. Zinc Co., 107 S. W. 1016. A defective hammer: Duerst v. Stamping Co., 163 Mo. 607; Roberts v. Mining Co., 105 Mo. App. 78. A defective maul: Franklin v. Railroad, 97 Mo. App. 473. Defective boxes: 86 Mo. App. 429. Loose planks: Conroy v. Iron Works, 62 Mo. 35. A defective rope: McGowan v. Railroad, 61 Mo. 528. An ordinary bolt, which the servant was tightening by means of a claw bar: Browning v. Railroad, 118 Mo. App. 449. (5) The fact that a tool was simple in construction and in common use, does not relieve the master of his duty to use ordinary care to see that it was in a safe condition. The courts of this State and of most other States in the Union, have never adopted the Illinois doctrine as to simple tools. Denker v. Milling Co., 135 Mo. App. 340; Reeder v. Lime Co., 129 Mo. App. 107; Dando v. Tel. Co., 140 Mo. App. 511; Buckner v. Stockyards, 221 Mo. 700; Phelps v. Zinc Co., 218 Mo. 572. (6) The fact that a

tool is simple and in common use does not relieve the master from liability for furnishing it in a defective condition, as a matter of law. Such fact may become important and material in determining some other proposition of law involved in the case and such are the decisions cited by appellant, but in no case cited has the non-liability of the master been put upon the ground that the tool was simple and in common use.

, GRAVES, J.—Plaintiff, once a section man in the employ of defendant, sues for damages in the sum of $4000 for injuries alleged to have been sustained by him, whilst in defendant's service, by reason of having had furnished to him a defective claw-bar with which to pull spikes from railroad ties. He recovered, by the verdict of a jury, $500, and from a judgment upon such verdict the defendant appealed to the St. Louis Court of Appeals, where by the majority opinion the judgment was reversed, but by a dissenting opinion the cause was duly certified to this court for determination. Negligence is thus charged in the petition.

"That as plaintiff's employer, it was defendant's duty to furnish plaintiff with good and reasonably safe tools with which to perform his work. That the defendant, wholly disregarding its duty in that behalf, furnished to plaintiff a claw-bar which was old, worn, bent and out of repair, and the claws of said bar sprung and spread apart, so that the claws of said bar would not hold upon a spike when in use, which said fact was well known to defendant, but was unknown to plaintiff and could not have been discovered by the exercise of due care on his part. That while plaintiff, in the performance of his duty was engaged in the performance of his duties, and using the said defective claw-bar, the plaintiff placed the claws of the said bar under a spike and threw his weight upon the bar so as to draw or remove the spike. That the claws

of the said defective claw-bar, on account of the bent, worn and old condition and being out of repair, slipped off the said spike, thereby throwing plaintiff violently to the ground, where his knee came in violent contact with another spike or piece of iron, whereby his knee was greatly bruised or injured."

The material portion of the answer after a general denial, reads:

"Further answering, defendant says that plaintiff's injuries, if any, were caused solely by, and are due directly to, his own carelessness and negligence and that of his co-employees, all directly contributing thereto; and that the injuries, if any, to the plaintiff, were due to risks assumed by plaintiff in his employment and work for defendant."

We find no reply in the abstract of record, but this is immaterial, as the case proceeded below as if one had been filed.

Plaintiff in his testimony says that he was a farmer, thirty years old, and had lived all his life near Tipton Ford, a point on defendant's railroad; that he had worked on the "extra gang" for a few days, at a time previous to his last employment by the defendant; that he had been working on the section some four or five days, when the foreman gave him a claw-bar, and put him and one Morris to pulling spikes from some ties which had been piled up along the railroad; that this was on November 21, 1906; that he had no experience in the use of claw-bars; that the foreman had never told him about the bar given to him; that the claw-bar was "all worn out between the forks and would not pull;" that Morris drove the claws of the bar under the spike's head with a hammer or maul, and that both of them would then bear down on the handle of the bar to pull the spike; that this was done each time until the time he was hurt; that the claw-bar would slip off three or four times in pulling each spike; that when he was hurt, Morris had driven the

claws under the spike, and he then without Morris's assistance attempted to pull the spike; that in so doing he threw his whole weight upon the bar, and when it slipped, as it had done every time theretofore, he was thrown down and struck his knee upon the head of a spike and thus received the injury to the knee complained of in this action. On his cross-examination he thus describes the situation:

"Q. How many spikes did you pull before this accident? A. I think about ten, I guess.

"Q. Did it slip out any other time? A. Yes, sir; four or five times on every spike.

"Q. Four or five times before that? A. On every spike.

"Q. Slipped on every spike? A. Yes, sir.

"Q. Did you see this other man working with this bar before you got it? A. Which man?

"Q. Joe Morris. A. We was both working there together.

"Q. Did you work with this crow-bar? A. No, sir; generally always drove it up with a hammer.

"Q. Was he driving it up at the time you was injured? A. Yes, sir; he drove it up.

"Q. Where was he at that particular time? A. Standing by me.

"Q. Looking at you? A. I don't know, he was there ready to bear down on the bar when I did.

"Q. Did he bear down on the bar with you? A. No, sir.

"Q. Did he bear down on the bar those other times when it had slipped off the spikes? A. Yes, sir.

"Q. Did you fall the other times? A. No, sir; never fell before.

"Q. How did it happen you didn't fall before? A. Just happened I didn't bear down hard enough to fall; throw my weight on it hard enough to fall.

"Q. Did you throw more weight on to this one

than the others? A. On that one, I throwed my whole weight on it.

"Q. Did you fall because you didn't have a good hold on the bar? A. I had hold on the bar.

"Q. You did have a good hold? A. Yes, sir; the bar fell when I did.

"Q. What made you say you thought you had a good hold on the bar? A. I said I thought I had a good hold on the spike with the bar.

"Q. You didn't say spike a while ago. A. That is what I was talking about.

"Q. Did Morris fall when he was using this spike puller? A. No, sir; he never would bear down hard enough on it to fall.

"Q. That is what makes it fall, bearing hard on it? A. The bar slips is what makes it fall.

"Q. What makes you say he didn't bear hard enough to fall? A. He never did fall.

"Q. How long was this projecting point of the bar that you have described to the jury? A. I suppose about as long as your fingers.

"Q. And the place is about as big as this, when your fingers are spread apart? A. Only they are worn out.

"Q. How big are they naturally? A. The other one was not half as wide in between as this old one, the good one wasn't.''

As we gather it from the evidence a claw-bar is a bar of iron five or six feet in length, having at one end two forks something like those of the ordinary claw-hammer, and back of these claws or forks was the heel, which extended back of the handle, as the prongs or claws extended to the front of the handle or bar. This heel served a dual purpose, i. e.: (1) the operator struck it with a maul to drive the claws under the head of the spike, and (2) it served as a fulcrum when the operators bore down upon the handle to draw tne spike. It is shown that these forks or claws were

worn so that they were wider apart than in a new bar, and that the heel was battered from the use of the maul or hammer. Other matters of evidence may be required and will be given in the course of the opinion at the proper point. For the present this sufficiently states the case.

I. That it is the general law that the master must furnish to the servant a reasonably safe tool or appliance with which to work cannot be questioned. In this case able counsel for defendant urges with much force that the broad rule does not and should not apply to simple appliances, such as the one here involved. Much learning is collated upon this question as well as upon other questions. Much is said by our brothers of the Court of Appeals, but to my mind we need not go into these contested questions for a determination of this case. This case is determined by plaintiff's statement of the facts. Grant it that he did not at first fully appreciate the condition of this claw-bar, because that can be granted and leave the net result the same. Plaintiff says that they used this bar upon ten spikes before they used it upon the one being pulled at the time of his alleged injuries. He further says that it slipped off of each of these spikes four or five times. Yet, with this knowledge, gained by this experience, when the claw-bar is placed upon the last spike, without waiting for the help of his co-employee, he deliberately threw his whole weight upon the bar. When he did this, he had good reasons to know that the bar would slip and if it did slip, he knew that he must fall. With his whole weight thrown upon the bar he could do nothing else but fall, if the bar slipped from the head of the spike. As a man of any sense he knew that he must fall from this act if the bar should slip, and he further knew that the bar had slipped upon each and every previous spike. As to the latter he so testifies.

*Contributory Negligence.*

Had he waited for his co-employee and had he not thrown his whole weight upon the bar the result would have been different, although the claw-bar might have slipped. The act of throwing his whole weight upon this claw-bar under the circumstances of this case was negligence upon the part of the plaintiff, and this negligence was the direct and proximate cause of his injury. Such negligent act may have been combined with negligence of the defendant in producing the injury, but this does not help the plaintiff's case. To my mind the case turns more upon the facts than upon the law. We can concede all the legal questions contended for by the able counsel for plaintiff, but we cannot concede from this case this patent fact made apparent by plaintiff's version of his case. If for no other reason this judgment should be reversed on the ground of plaintiff's contributory negligence, which contributory negligence is made to appear by the evidence for plaintiff. Where the contributory negligence is made to appear by the plaintiff's proof of his case, the character of defendant's pleadings is not very material. [Sissel v. Railroad, 214 Mo. 515.]

It requires no citation of authority upon the proposition that if the negligence of the plaintiff coupled with the negligence of the defendant is the proximate cause of the injury, then the plaintiff cannot recover. In this case it may be conceded that the defendant was negligent in furnishing this unsafe simple tool or appliance, and yet the injury would not have occurred but for the rash and negligent conduct of the plaintiff in throwing his whole weight upon a claw-bar which he knew had slipped upon each previous spike. To use his own language, "I throwed my whole weight on it." The most inexperienced boy should have known better under the facts disclosed by this record. Let the judgment be reversed. All concur; *Woodson, P. J.,* in result.