# WILLIAM L. ROGERS, Respondent, v. TEGARDEN PACKING COMPANY, Appellant.

### Springfield -Court of Appeals, November 5, 1914.

1. **MASTER AND SERVANT: Personal Injuries: Review of Evidence.** Action by servant against master on account of injuries received while pushing a loaded truck ,through a door over a cement floor which contained a defect. Review of evidence made.

2. **NEGLIGENCE: Definition.** Negligence is the failure to exercise that degree of care which ordinarily prudent persons are accustomed to exercise under like circumstances, and the question of negligence depends upon the facts of each particular case.

3. **CONTRIBUTORY NEGLIGENCE: Bar to Recovery.** Where a person has by a negligent act on his part directly contributed to his own injury, he may not recover, regardless of how his carelessness compares with the other contributing cause of his injury.

4. **————: Standard of Determining.** In case there is but one way to perform a certain act, the question of contributory negligence depends on whether or not an ordinarily prudent man would have performed the act or left it unperformed. In case there are two ways of performing the act, the question then is whether an ordinarily prudent man would have performed it in the way selected by the plaintiff.

5. **————: Choice of Dangerous Method.** If two ways are open to a servant to use, one safe and the other dangerous, the choice of the dangerous way with knowledge of the danger constitutes contributory negligence and bars recovery.

6. **MASTER AND SERVANT: Personal Injuries: Contributory Negligence: Evidence Summarized.** Action against master by servant for personal injuries, the injury occurring while servant was pushing a loaded truck through a door over a defective cement floor. Evidence summarized and considered sufficient to establish contributory negligence which barred recovery.

Appeal from Green County Circuit Court.—*Hon. Guy D. Kirby*, Judge.

REVERSED.

*Wm. H. Horine, Roscoe Patterson* and *J. T. White* for appellant.

(1) The trial court erred in overruling defendant's demurrer to the evidence at the close of all the evidence. The evidence shows the plaintiff chose an unsafe way to push his truck when a safe way was open to him; and because he was well aware of the condition of the floor, knew the truck was likely to slip into the depression on the floor and tilt to one side, and yet he placed his hands on the sides where they were certain to be mashed if the truck tilted. Schiller v. Breweries Co., 156 Mo. App. 569; George v. St. Louis Mfg. Co., 159 Mo. 333; Moore v. Railroad, 146 Mo. 572; Smith v. Box Co., 193 Mo. 715; Wilkinson v. Andrians Bottling Co., 154 Mo. App. 563; Montgomery v. Railroad, 109 Mo. App. 88; Slagel v. Lumber Co., 138 Mo. App. 432; Meyer v. Railroad, 103 Mo. App. 268; Pohlmann v. Car & Foundry Co., 123 Mo. App. 219; Harris v. Railroad, 146 Mo. App. 524. (2) The trial court should have given instructions number 4 and 5, which would have submitted the issue to the jury as to whether plaintiff chose an unsafe way when a safe way was available to him. Cases cited under point I. (3) The court erred in giving the instruction on the measure of damages, which told the jury they might award "such further sum as you find from and believe from the evidence will compensate plaintiff for future loss of wages and future impaired earning power. Because there was no evidence of future impaired earning power; and because the petition does not allege that sort of damage. Davidson v. Transit Co., 211 Mo. 320; McNell v. Cape Girardeau, 153 Mo. App. 424; Boyce v. Railroad, 120 Mo. App. 168, 176; Palmer v. Railroad, 142 Mo. App. 440; Becker v. Lincoln R. E. Co., 118 Mo. App. 74.

*Williams & Galt* for respondent.

(1) Although plaintiff knew of the defective condition of the floor he was not for that reason bound to quit the service of defendant unless the danger was so glaring that a person of ordinary prudence would not have pushed the truck over it under the circumstances shown in evidence, but was required to exercise care and caution in its use, commensurate with apparent danger, and these, under the evidence, were questions for the consideration of the jury. Pauck v. Beef & Provision Co., 159 Mo. 478-479. (2) Under the circumstances of this case the allegation of loss of time which could have been devoted to labor· for the benefit of plaintiff and his family authorized an instruction that he could recover for future loss of wages and impaired earning power. In substance these are equivalent phrases. Smith v. St. Louis Transit Co., 133 Mo. App. 202. (3) Evidence of impaired earning capacity having been admitted without objection, an instruction covering the point was proper. Madison v. Railroad, 60 Mo. App. 599; Mellor v. Railroad, 105 Mo. 455; Litton v. Railroad, 111 Mo. App. 146.

FARRINGTON, J.—The plaintiff was the servant of the defendant and had been for eight or nine years prior to his injury, working in the same place and at the same kind of employment. His finger was mashed while engaged in that employment. He brought this action for damages, charging the defendant with negligence in furnishing him an unsafe place in which to work. A judgment was recovered in his favor and the defendant appeals to this court charging, among other things, that the evidence shows conclusively that the plaintiff was guilty of negligence which contributed to his injury and that the court erred in submitting the issues to the jury.

Taking the same view of the case that appellant does, it will be unnecessary to discuss it from any other standpoint than that the plaintiff was guilty of contributory negligence as a matter of law. We will therefore start with the premise that the defendant was negligent as charged in the petition.

The case made, in the light of every reasonable inference drawn in plaintiff's favor (which is the case with which this court must deal), is as follows: For nine years prior to his injury the plaintiff worked in the cellar of defendant's packing plant, curing meat. This cellar was divided into rooms, referred to in the evidence as the old cellar, the east room, the wash room, and the curing room. The plaintiff was injured while trucking meat from the curing room through the wash room into the old cellar. The meat was carried out of the cellar by means of an elevator located in the southeast corner of the old cellar room, first having been brought on a truck from the curing room through the wash room and into the old cellar room. It was in the line of plaintiff's duty to operate the truck between these places. The floor of the entire cellar was concrete, and was in bad condition in that, as charged in the petition, the concrete or cement was full of holes, ruts or depressions, and was unsafe, dangerous and unfit for the use to which it was put by the defendant. There was a traveled route or runway northward across the old cellar from the elevator shaft to the door of the wash room, which was full of holes. The defendant had caused boards to be fitted into these holes so that a truck could be run over them. The hole that was the cause of the accident was about two and one-half inches deep and had a board fitted into it two inches thick by eight inches wide. The board was fitted in the hole loosely and was not imbedded or fixed in the cement. The condition of this cellar floor and the location of the holes was known to both plaintiff and defendant long prior to the in-

jury, and it was at plaintiff's request that the floor be repaired that the loose boards were placed in the holes. The wall of the wash room had been built against the north wall of the cellar, and an opening cut through the two walls formed a door, and it was at this point that the injury occurred. These two walls joining each other were about three feet thick, making the face of the door jambs the same thickness. The truck furnished by defendant had been run through this doorway back and forth between the curing room and the elevator shaft. There was a bad hole in the floor of the old cellar in or near this doorway. The truck had four wheels; the front wheels were rigid, but the two rear wheels worked on bearings or casters —were pivoted, so that the truck had to be guided by pushing from the rear. The platform of the truck was about sixteen inches from the floor. On top of the platform was fastened a box or bin, wider at the upper rim than at the bottom. This box or bin at the top was three feet wide according to plaintiff's evidence. The doorway through which the truck was being pushed when the injury occurred was four feet wide. The top of the bin, measured from the floor, was three feet and six inches high, and the truck was three and one-half feet long. It did not have handles to push by, nor any tongue. It had been in use at that place for three or four years.

On June 22, 1912, plaintiff was ordered by the defendant's foreman to send up on the elevator fifteen hundred pounds of meat. He loaded the meat on this truck in the curing room. The bin was full and the meat extended over at the front and back ends, which was the usual way of loading. Plaintiff started with the truck toward the elevator shaft. In going through the doorway from the wash room to the old cellar room one front wheel of the truck struck the hole in the cement floor and dropped into it and the truck was fastened in the doorway. Plaintiff at this

time was.working by himself and tried to get the truck out of its fastened condition but was unable to do so. He then called up to the management to send down a man to help him, and a man was sent who brought along an iron hook with which to help pull the truck out. The plaintiff testified that they backed the truck far enough to get the front wheels out of the hole; that it was backed some six or eight inches. The board was replaced in the hole, and with the helper in front pulling and the plaintiff behind pushing, the truck was started through the doorway again—not by a "running shoot," the plaintiff said. Plaintiff testified that the truck had been fastened in this place before, but that he had succeeded at such times in getting it through without injury to himself by having help and using the best judgment he could. When they started through this second time, plaintiff with his hands partly over the outside of the bin nearest the door jambs, the board came out again, causing the truck to fall over against the cement door jambs, catching and mashing the end of the third finger of plaintiff's hand which was on that side. Plaintiff testified that he was handling the truck in the usual way—in the way he had handled it before; that he had a reasonable load on the truck; that he had gone through that way before without getting hurt; that it was necessary to take hold of the truck as he did in order to guide it; and that he did not intend when he loaded the truck to run it against the door. The only other eyewitness, the man who was helping plaintiff get the truck through the doorway, testified that it never entered his mind that the truck would go against the door jamb and that he thought it would go through all right.

There was evidence pro and con as to the proper manner in which one pushing the bin from the rear should take hold of it with his hands. Plaintiff's evidence was that the proper way, in order to guide it,

was to do it just as he did when he was injured. The space between the plaintiff's fingers on the sides of the bin and the door jambs was about six inches on each side, the doorway being four feet in width and the top of the bin three feet in width. The plat introduced in evidence shows this runway, through the door and on each side of it, was straight, and the truck when going through this four foot doorway was only one-half foot longer than the jambs of the doorway were wide.

The foregoing statement is practically all taken from the statement of the case appearing in respondent's brief touching the scene, equipment, incidents and account of the manner in which the injury was caused.

There is nothing in this record showing anything to prevent the plaintiff from putting his hands against the back side of the bin in order to push it through the narrow doorway. It is shown that from the way in which he had loaded the bin he could not grasp the top of the bin in the rear as the meat extended over the top.

With the facts in mind, we come to apply the law and to determine whether the plaintiff in placing his hands on the side of the bin where some of his fingers were between the wooden bin and the cement door jambs, under the circumstances detailed, acted as an ordinarily prudent man would have acted, and more, whether reasonable men could differ, under the statement of the facts, in the conclusion to be drawn therefrom.

In considering this case it will be well to bear in mind some of the fundamental principles which require no citation of authority.

"Negligence" has been defined as being the failure to exercise that degree of care which ordinarily prudent persons are accustomed to exercise under like circumstances. Contributory negligence necessarily

implies such failure on the part of more than one person. The rule in Missouri is that where a plaintiff has by a negligent act on his part directly contributed to his own injury he may not recover, regardless of how his carelessness compares with the other contributing cause of the injury. Again, *negligence* is purely a relative term, and depends upon the facts of the particular case. For instance, if there were but one way to do a given act and that way was dangerous, in determining whether the person who was injured in doing the act conducted himself as an ordinarily prudent person a court would have to determine whether an ordinarily careful person would have attempted to do it at all or whether such a person would have refused to go on with it because the act to be done was so glaringly dangerous that no ordinarily careful person would take the chances in performing it. In such a case, the circumstances require a judgment to be formed and acted upon by either performance or abandonment. Another instance: A certain act is to be done, and two ways are open for performance, one as much at hand and within the grasp of the actor as the other. One way, by the very nature of the circumstances, is more hazardous and dangerous than the other. By voluntarily following one method an injury may be reasonably and naturally anticipated. By using the other method the act can be performed in safety. In such a case, a court would be called upon to say which method reason and prudence and ordinary care would dictate. As an illustration: A surgeon is called to attend an injured man, and an immediate operation is imperative. The only instrument at hand is one that shows it has not been sterilized, from which fact he must know that to use it may infect the patient and cause blood poisoning. He must use it in that condition or not at all. He does use it and blood poisoning follows. His course is questioned. To determine whether he was negli-

gent in using such an instrument it must be ascertained whether under the circumstances he used such care as a reasonably careful surgeon woud have exercised, or, whether the apparent condition of the instrument rendered its use so dangerous that no prudent surgeon would have taken the chances of operating with it. Now, suppose there were at his hand not only this instrument but another which showed that it was properly sterilized and the surgeon had the choice between them and chose the unsterilized instrument. His conduct would then be measured by a determination of which instrument an ordinarily prudent surgeon would have used.

While it cannot be laid down as a set rule that ordinary prudence requires every act to be done in the safest way, yet in determining whether the way it was done meets the requirement as to the exercise of ordinary care, either as a question of law or one of fact, there must be taken into consideration the circumstances surrounding the occurrence of an injury sustained in doing the act; and the existence of a safer method which was at hand and within the voluntary choice of the injured person always enters into the question as a material element; it is one of the surrounding circumstances.

The evidence, summarized, is that the plaintiff knew that a rut existed in the floor, and that the board that had been placed over it had come out at previous times and let the truck wheels down so as to get it fastened in the walls forming the door jambs. He also knew that very thing had just occurred because he had called for help to get it out. He must, therefore, be held to a knowledge that it was likely to happen again, and as a reasonable man he must have known that if it did occur the bin would be certain or most likely to fall against the cement wall, and that if his finger was between the two (the cement wall on the one side and the bin containing fifteen hundred

pounds of meat on the other) it would in all probability get mashed and injured.

This case involves no complicated machinery, nor conditions that are difficult to understand. The truck, only three and one-half feet long, had to be merely pushed through this space over a distance of three feet. The regular route, as shown by the plat, to, through, and on from, the door, for a considerable distance, was straight. It could require nothing but a straight push to make the truck go where it was wanted, and that is especially true while going through the three foot space. The whole back end of the bin was there to place the hands against and push it through. The plaintiff testified he could guide the truck better by placing his hands as they were at the time of the injury; but the physical facts show that at this particular place there was no necessity to guide; the truck could only go straight through the opening and was intended to go straight through. He therefore had open to him a safe way and a way that was dangerous (but not so dangerous, perhaps, that ordinary prudence would have dictated an abandonment of the undertaking because that choice was not put up to him). A choice between a safe and an obviously unsafe way was put up to him, and he voluntarily chose the less safe way. By the mere shifting of his hands slightly toward the center of the back side of the bin—a distance of less than half the width of his hand—he could have pushed the truck through, and when it did fall, as he had cause to believe it would, he would have remained uninjured. It is apparent from the instructions that the circuit court tried the case on the theory that plaintiff had a right to do it either way, provided the way he did it was not so glaringly dangerous that an ordinarily prudent man would not have attempted to do it in that way. This is not the rule where the servant is confronted with a safe and an unsafe way to perform his work.

The test in this case is whether one in the exercise of ordinary care would have chosen the safe method, or that ordinary care forbade the use of the dangerous way when the safe way was at hand. It seems to us that for plaintiff to place his finger where he did with his knowledge of the danger, the circumstances, surroundings, and conditions, was a thoughtless, careless, heedless and unnecessary way, as to which reasonable men could not differ.

The rule we adhere to is declared in the textbooks and upheld by the decisions of our own and many other States. In 29 Cyc. 520, the rule is thus stated, citing Meyers v. Railroad, 103 Mo. App. 268, 77 S. W. 149: "If two ways are open to a person to use, one safe and the other dangerous, the choice of the dangerous way with knowledge of the danger constitutes contributory negligence." To the same effect, see 2 Bailey on Personal Injuries, sec. 469, p. 1376, and 3 Labatt's Master & Servant, sec. 1249, p. 3432. This rule is approved in Moore v. Railway Co., 146 Mo. l. c. 182, 48 S. W. 487, and in Smith v. Forrester-Nace Box Co., 193 Mo. l. c. 737, 92 S. W. 394, in this quotation: " 'Where a person having a choice of two ways, one of which is perfectly safe and the other of which is subject to risks and dangers, voluntarily chooses the latter and is injured, he is guilty of contributory negligence and cannot recover.' " It has been upheld in the following cases where the facts required the same application of law: Pohlmann v. Car & Foundry Co., 123 Mo. App. 219, 100 S. W. 544; Montgomery v. Railway Co., 109 Mo. App. 88, 83 S. W. 66; Hirsch v. Bread Co., 150 Mo. App. 162, 129 S. W. 1060; Schiller v. Breweries Co., 156 Mo. App. l. c. 579-580, 137 S. W. 607; George v. Manufacturing Co., 159 Mo. 333, 59 S. W. 1097; Wilkinson v. Andriano Bottling Co., 154 Mo. App. l. c. 570, 136 S. W. 720; Dawson v. Railway Co., 114 Fed. l. c. 872; Gilbert v. Railway Co., 128 Fed. 529; Morris v. Duluth,

etc. Ry. Co., 108 Fed. 747; Russell v. Tillotson, 140 Mass. 201, 4 N. E. 231; Carrier v. Railway Co., 61 Kan. 447, 59 Pac. 1075; and Loranger v. Railway Co., 104 Mich. 80, 62 N. W. 137. The case of Dolstrom v. Newport Min. Co. (Mich.), 130 N. W. 643, is an example showing the principle here involved. The court there held that the plaintiff, a servant, knowing that a cable used to pull cars would be thrown to one side of the track if it came off the idler, walked on one side after placing the cable, which had come off, and was struck by it when it came off again, was guilty of contributory negligence precluding a recovery for injuries sustained. Our own Supreme Court has recently held a plaintiff guilty of contributory negligence in law precluding a recovery where the servant knew that a defective clawbar was liable to slip and threw his whole weight on it and was thereby injured. He could have done exactly what he had to do by handling the clawbar in a different manner and not been injured. [Harris v. Railway Co.; 250 Mo. 567, 157 S. W. 564.] This principle we apply is of no recent origin, however. It is expressed in an ancient Hindoo maxim which runs as follows: "All things have two handles; beware of the wrong one."

We are cited by respondent to the case of Pauck v. St. Louis Beef & Provision Co., 159 Mo. 467, 61 S. W. 806, but an examination of the opinion discloses that it does not bear on the question before us. There the servant had not the choice of a safe and unsafe way of doing his work but his choice in that case was to do it in the one way that was before him, which was unsafe, or refuse to do it at all.

Nor does plaintiff's evidence that he had taken this truck through this particular doorway in the same manner on previous occasions without injury help him. It is not proof of the exercise of ordinary care to show that one doing a negligent act a number of

times escaped without injury. [Dawson v. Railway Co., 114 Fed. l. c. 872.]

Viewing plaintiff's act from a common sense standpoint he knew that the bin and the cement door jambs were likely to come together because they had done so before. If they did, he must have known as an ordinarily prudent man that if his fingers were in the position they were actually in they would almost certainly be injured. He could have placed his hands at another place and pushed the truck through the doorway and not been hurt when the truck fell into the hole as he had ample cause to expect it would. Whether this injury had occurred in his own cellar or in that of a master, under the circumstances there could be but one reasonable conclusion drawn, and that is that his act was thoughtless, careless and negligent.

The judgment is reversed. *Sturgis, J.,* concurs. *Robertson, P. J.,* dissents.