235 S.W.2d 407 (1950)
HATHAWAY
v.
EVANS.
No. 21424.
Kansas City Court of Appeals, Missouri.
December 4, 1950.
*409 Jayne & Jayne, Kirksville, for appellant.
L. F. Cottey, Lancaster, for respondent.
BROADDUS, Judge.
This is an action for damages for personal injuries. Plaintiff had a verdict for $5000 and defendant appeals.
The action arises out of an accident which occurred on December 23, 1948 in Schuyler County, Missouri. Highway No. 4 runs in a westerly direction from Lancaster, Missouri, and at a point about 7 miles west of Lancaster a dirt road referred to as the "ridge road" leads off to the north. At a point about 2 miles north from Highway No. 4 is a county road which leads from the "ridge road" to the west. Just north of this county road and west of the "ridge road" is the home of Floyd Lucas. The intersection of these two dirt roads at the Floyd Lucas home is known as the "Lucas corner."
Defendant was the owner and operator of a truck and on the day of the accident was employed to haul some loose hay for plaintiff. That afternoon, defendant, accompanied by plaintiff and plaintiff's son-in-law, Ward, drove to the "Lucas corner," then turned west and proceeded to the end of the county road, a distance of about 7/10 of a mile. There they entered the field of plaintiff through a gate and drove a short distance to a stack of hay.
Plaintiff and Ward were loading the truck from the top of the stack and defendant was placing the hay in the truck when plaintiff inquired of defendant whether or not he had ever loaded much loose hay and, upon receiving a negative answer, said he would load the truck inasmuch as he was "an old hand at it." When the loading was completed defendant placed a rope over the hay from the front of the truck to the back. The hay then protruded one or two feet above the truck. While still on top of the hay plaintiff was asked if he was going to ride in the cab of the truck or on the hay and he said: "I'll balance the load to the top of the hill at the `Lucas corner.'" Plaintiff assumed a position in the center of the load of hay on his knees. He had two pitchforks. These he stuck in the hay holding one with his right hand, the other with the left. Defendant and Ward rode in the cab of the truck, defendant driving. The cab windows were up and the heater was on.
It was a cold day with the temperature below freezing and a "little hard snow" falling at the time. The truck traveled out of the field through the gate and onto the county road and proceeded east toward the "ridge road." The road from the field was lined with over-hanging trees which were low enough so that they brushed the hay and plaintiff as the truck traveled along. As the truck approached the intersection of the two dirt roads known as the "Lucas corner" it was traveling at a speed of 10 to 15 miles per hour.
South of the Lucas home and crossing the county road, which, as stated, leads from the field with the hay stack, was a telephone wire strung between a pole placed in the yard of the Lucas home and *410 a pole on the south side of the road. This wire crossed the roadway at approximately right angles and at a height of about 13 feet. About 15 yards west of the telephone wire were three electric wires of the R.E.A. These wires ran diagonally across the roadway from the Lucas home in a generally southwesterly direction. The electric wires were high enough to clear the truck and hay and plaintiff thereon. Plaintiff testified that "he was watching so the fork handles wouldn't touch the light wires" and that he did not see the telephone wire until he was within 10 or 12 feet of it. He then attempted to raise it by using the handles of the pitchforks which he was holding. However, the wire struck the hay and "it looked like it rolled over the top of the hay." The wire struck plaintiff and he was thrown from the truck onto the frozen roadway sustaining severe injuries. Plaintiff was 62 years of age.
The telephone wire was some 25 to 30 yards west of the "ridge road". The truck proceeded to the "ridge road" and as it turned to the south thereon Ward opened the door to see if plaintiff was ready to get down into the cab of the truck, and as he looked back he saw plaintiff lying in the roadway. This was the first knowledge that either defendant or Ward had of the accident. It occurred between 2:00 and 2:30 p.m.
Defendant's answer was a general denial and coupled with it were specific allegations that defendant in driving the truck was merely carrying out the instruction of plaintiff; that plaintiff assumed and incurred the risks and was guilty of contributory negligence.
Defendant's first contention is that the court erred in failing to sustain his motion for a directed verdict for the reason that plaintiff's evidence failed to sustain the specific charge of negligence made in the petition.
The petition, after reciting that it was defendant's duty, as the operator of the truck "to exercise the highest degree of care for the safety of plaintiff", charges that he failed to do so in the following particulars, to-wit: That defendant negligently drove the truck "without maintaining an adequate or careful lookout ahead and to either side of said truck to discover and avoid obstacles in, and overhanging, in the path of said loaded truck, and so negligently drove said truck into and under a certain wire stretched across said highway * * * which said wire was located at such height that the same struck the load of hay on said truck and this plaintiff, and caused plaintiff to be thrown violently from said truck to the ground."
The gist of the above charge is thus seen to be the fact that defendant drove his truck under a wire located at such height that it would not and did not clear the load, and that plaintiff was thereby struck and hurled to the roadway. It is true that the petition also charged that defendant "forgot" to stop the truck at the "Lucas corner," and failed to permit plaintiff to dismount therefrom, and continued to drive said truck past said "Lucas corner", without stopping. However, in order for plaintiff to recover it was not essential that he prove these latter allegations. As stated in Noell v. Chicago & E. I. Ry. Co., Mo.App., 21 S.W.2d 937, loc. cit. 943, "where the petition states all the facts entitling the plaintiff to recover, and in addition states unnecessary facts, the plaintiff will not be required to sustain the unnecessary part of his pleading or fail in his action, even though he tried the case on that theory below; but, if he has proved enough to make out a case, he may still recover, and the unnecessary allegations will be treated as surplusage."
The evidence fully supported the necessary allegations of the petition. It is undisputed that as the truck approached the low overhanging telephone wire, plaintiff was riding atop the load with the knowledge and consent of defendant driver. The wire was only 13 feet above the surface of the roadbed, at such a height that it barely cleared the cab of the truck and rolled up the hay on the load which extended a foot or two above the top of the cab. There was nothing obscuring defendant's *411 vision. The windows in the cab were clean. Defendant could have seen the wire if he had been looking for it, and, in fact, admitted that he did not see how he could have "missed seeing it." It was impossible for the truck to pass under the wire without the same dragging plaintiff off. Under all of the circumstances, defendant was clearly negligent.
Defendant's second contentionthat plaintiff was guilty of contributory negligence as a matter of lawis based on two propositions: 1st, that plaintiff was negligent as a matter of law in riding on top of the load, or, to the same effect, that he voluntarily incurred the risk of his injury by doing so; and 2nd, that he was negligent as a matter of law, in failing to see the wire before he did, or his conduct thereafter. We take these in order.
No case has been found where the fact situation is the same as the one here presented.
The hay was loose; it projected a foot or two above the cab of the truck and bulged over the sides; the road was hilly and rough, and the graded part narrow; it was windy. Under those circumstances, plaintiff did what many farmers would have done, he announced his intention of riding on the load to steady it, and defendant evidently treated that decision as being so natural and normal as to merit neither protest, warning nor comment of any kind. Plaintiff assumed a kneeling position in the center of the load of loose hay, drove two pitchforks down into it laterally in front of him and braced himself by holding on to the fork handles; the load was further secured by a rope tied from front to back over it. His position was such that it was practically impossible to dislodge him, except as it turned out, by the unforeseen method of dragging him off with a taut, unyielding wire.
On this question, the case of Rogers v. Tegarden Packing Co., 185 Mo.App. 99, 170 S.W. 675, 677, is in point. There the court said that where there is but one way to do a given act(like steadying a load of hay, for instance)and where it is claimed that way is dangerous, then, in determining whether the actor was guilty of negligence as a matter of law, the court would have to decide that "the act to be done was so glaringly dangerous that no ordinarily careful person would take the chances in performing it." Surely we should not say the act which plaintiff undertook to do, in the manner in which he undertook to do it, was so "glaringly dangerous" that no ordinarily prudent person would have undertaken it.
But defendant says that plaintiff voluntarily incurred the risk of being dragged off by the wire. The doctrine of "incurred risk" applies where one "voluntarily exposes himself * * * to a known and appreciated danger due to the negligence of another." 45 C.J. p 1043; 65 C.J.S., Negligence, § 174. Thus, in Dietz v. Magill, Mo.App., 104 S.W.2d 707, which defendant cites as an authority for his position, plaintiff undertook to descend an unlighted stairway, and rejected an offer on defendant's part to turn the lights on for him. But the case at bar presents a different situation. Up to the very instant that plaintiff first saw the telephone wire there was no "known and appreciated danger." The thing that happened in this case was that defendant, who had sole charge of the operation of the truck, drove it under a taut wire so located, that it was impossible for plaintiff to escape injury. That plaintiff could not anticipate, nor was he obliged to. As said in Shamp v. Lambert, 142 Mo.App. 567, 121 S.W. 770, 772: "The law is satisfied if individuals conduct themselves with the degree of care usually exercised by a person of ordinary prudence; and, in thus conducting themselves, they are not required to anticipate negligence on the part of others which may result in entailing injury upon them. The court is authorized to declare a plaintiff guilty of contributory negligence, and thus preclude a recovery, as a matter of law, only when it appears that he or she has voluntarily encountered dangers, and assumed a situation fraught with imminent peril to his or her safety, when considered apart from *412 and without the intervention of the negligence of the actor who entails the injury."
In the case at bar plaintiff testified that he had confidence in defendant as an experienced truck driver. He had, in addition the right to rely upon the presumption that defendant, as the driver of the truck, would exercise the highest degree of care for his safety and not drive him under a taut wire from which serious injury was bound to flow.
Nor can plaintiff be held negligent, as a matter of law, on account of what occurred immediately prior to and at the moment of the accident. Consider, again, the circumstances: The truck was proceeding eastward down the county road to the "ridge road" intersection. It rounded a curve about "two-tenths of a mile" west of that intersection. There, for the first time, the three R.E.A. electric light wires became visible. They were stretched diagonally across the road at a distance of forty or fifty yards west of the intersection. Beyond those R.E.A. lines, at a distance somewhere between twelve and fifteen yards, the telephone wire was stretched across the road approximately at right angles. There is no evidence as to whether or not this telephone wire was visible from the curve but plaintiff's Exhibit 1 (a photograph which is filed with the transcript) reveals that the R.E.A. lines are much larger, blacker and more readily visible than the telephone wire. They are also considerably higher than the telephone wire, and, as pointed out, were closer to the curve and hence constituted the first (and only apparent) hazard with which plaintiff thought he had to deal. He fixed his gaze on the R.E.A. lines and continued to watch them to be sure that they were going to clear the pitchfork handles safely and, as soon as they had done so, he glanced ahead and saw for the first time the telephone wire at a distance of "around twelve feet." He "hollered `hey'", but the truck did not stop. Confronted with this sudden emergency, plaintiff attempted to protect himself as best he could by tilting the pitchfork handles backward in the hope that they would deflect the wire over his head. But his efforts were unavailing; the wire was too low; it hit the hay on which he was kneeling, rolled it up as it came toward him, and threw him off to the ground. From the time he first saw the wire, he had no chance to prevent it from striking him. And a further circumstance enters directly into consideration in determining whether he ought, as a matter of law, to have seen the telephone wire sooner than he did. It is this: The evidence shows that it was a windy, cold day, and that it was "spitting snow""hard snow." A man with "hard snow" whipping into his face on a freezing cold day is not as likely to have vision as clear as otherwise might be expected of him. Considering the handicap of the raw weather, and plaintiff's preoccupation with the problem posed by the R.E.A. lines, and all of the other circumstances in evidence, we do not feel warranted in saying that plaintiff was negligent as a matter of law.
"Negligence is ordinarily a question for the jury. It is always so where different minds might reasonably draw different conclusions from the evidence as given. Negligence cannot be conclusively established, as a matter of law, upon a state of facts on which fair minded men of ordinary intelligence may differ as to the inferences to be drawn therefrom * * *. Before a court would be authorized to declare a plaintiff guilty of contributory negligence, as a matter of law, the evidence must be such as to permit of no other reasonable conclusion, giving the plaintiff the benefit of every reasonable inference that may be drawn from the evidence in his favor." Fierce v. Shapleigh Hardware Co., Mo.App., 14 S.W.2d 511, loc. cit. 513, quoting from Gillaspie v. Louisiana & M. R. R. Co., Mo.App., 260 S.W. 547.
Defendant cites Smith v. Ozark Water Mills Co., 215 Mo.App. 129, 238 S.W. 573, as holding that a man riding on the running board of an automobile is guilty of negligence as a matter of law, and argues that, by analogy, plaintiff was similarly *413 derelict in riding on the load of hay. But, as has been often said, circumstances alter cases. And in Sanford v. Gideon-Anderson Co., Mo.App., 31 S.W.2d 580, the same court at a later date refused to rule that a man riding on the running board of an automobile was guilty of negligence as a matter of law.
Instruction No. 1 purported to cover the entire case and directed a verdict. Defendant's criticism of it is that it did not require a finding of any specific act of negligence charged in the petition, but authorized the jury to find for plaintiff upon general negligence.
The instruction required the jury to find that defendant failed to exercise the highest degree of care for plaintiff's safety "in this particular, to-wit: That at said time and place the defendant negligently and carelessly drove his said truck under a certain overhanging telephone wire which was stretched across said road at a point so near the top of said truck that the same would not and did not clear said load of hay and the plaintiff on the top thereof * * * and plaintiff was thereby thrown to the ground and injured."
This was not a "roving commission" to the jury as asserted by defendant. It called for a specific finding which came within both the pleading and the proof. The very act of defendant in driving the truck under the low overhanging wire, under the circumstances, was the proximate cause of plaintiff's injury. The fact that the instruction did not also require the jury to find that defendant drove beyond a point where he should have stopped or that he operated the truck at an excessive speed, as alleged in the petition, was immaterial and unnecessary. As said by our Supreme Court in Brown v. Toedebush Transfer, Inc., 354 Mo. 611, 190 S.W.2d 239, loc. cit. 240: "Where the fact of such act of negligence was the real issue, as it was in this case, and where such negligent act, if proved, was the proximate cause of the collision, we may not convict the trial court of error for refusing to give plaintiff's instruction on the failure to keep a proper lookout, a remote cause of the collision. That issue was immaterial under the facts of this case. Submitting an immaterial issue is likely to confuse the jury and cause it to speculate as to the real issue." The instruction was proper.
Defendant's last contention is that his requested instructions A, B, C, D, E, F and G should have been given. We do not think so.
Instruction A called for a directed verdict in defendant's favor and from what we have heretofore said was properly refused.
B and E are in the nature of withdrawal instructions, taking from the jury's consideration the point that defendant failed to stop the truck at a previous turn in the road which, through some misunderstanding, had been considered by plaintiff to be the "Lucas corner," and the place at which he had at first intended to dismount from the load. Plaintiff abandoned any charge of negligence against defendant on that score, and it was not submitted to the jury. The refusal to give these withdrawal instructions was therefore not error. Smith v. St. Louis & A. R. Co., Mo. App., 50 S.W.2d 666, loc. cit. 668. If these instructions be treated as "cautionary" the result is the same. Fuenfgeld v. Holt, Mo. App., 70 S.W.2d 143, loc. cit. 148.
C was an unauthorized comment on the evidence and an attempt to shift defendant's statutory duty to plaintiff.
D proceeded on the theory that plaintiff had "assumed control and direction concerning the operation of defendant's truck" and had "instructed defendant where and how he should drive the same." There is no evidence in the record on which to base this instruction.
F is simply another instruction on contributory negligence. The court gave two instructions on this defense and it was not error to refuse a third.
G undertook to cover the doctrine of incurred risk but, as heretofore pointed out, the evidence does not afford a basis for this instruction.
The judgment should be affirmed, and it is so ordered.
All concur.