**Floyd E. IRLE, Plaintiff,**

**v.**

**Francis L. IRLE, Appellant.**

**No. 22205.**

Kansas City Court of Appeals. Missouri.

Oct. 3, 1955.

Wesner & Wesner, Sedalia, for appellant.

Gayles R. Pine, Warrensburg, for respondent.

BROADDUS, Judge.

This is an action for damages for personal injuries. Plaintiff had a verdict for $6,500 and defendant appealed.

The plaintiff, Floyd E. Irle, commenced the action by filing a petition in the Circuit Court of Johnson County on February 19, 1953, in which he alleged that on June 30, 1952, between the hours of nine and ten a. m., while assisting his brother Francis L. Irle, defendant herein, in roping and throwing calves, he was injured when defendant "suffered and permitted" the rope on a particular calf to "loosen and slacken" and thereby causing said calf to fall against and upon plaintiff.

Plaintiff and defendant lived upon adjoining farms in Johnson County. On June 30, 1952, defendant asked plaintiff to come to his farm and help him with some calves. Plaintiff arrived at his brother's place about 8:30 that morning. When he got there he found that his brother and the latter's son Roger, age 19, were engaged in castrating calves in a lot adjoining the barn. They had constructed a chute in which they were attempting to hold the calves. This meth-

od proved unsatisfactory, and it was decided to put the calves in the shed on the west side of the barn and use a "lariat rope" on them and "cinch" them as close as possible along the side of the shed. Plaintiff testified that there were about ten calves to be worked on that day, all belonging to defendant.

Describing the shed in which the roping operation took place and in which plaintiff was injured, he testified that it was approximately 36 feet square with two 12 foot driveways through it. It was built up solid on the west side, the east side had, enough boards to hold any live stock, and that there were "posts along the east side that could be used to tie stock to." In further describing the method in which the calves were worked on inside the shed, after the chute method was abandoned, plaintiff testified that they used a "lariat rope" to catch the calves and throw them and once they were secured one end of the rope would be put around a post, one and one-half or one and three-quarters turns, with his brother Francis holding the loose end. Plaintiff would then reach over, catch the calf's leg and throw it, and immediately catch the legs in such a manner that he could hold the calf down. He further testified that Roger Irle was helping hold the calves after he had once thrown them to the ground; that the calves weighed between 200 and 400 pounds.

Plaintiff was then asked if he recalled one of the calves falling on him and he replied that he did and described the particular calf that had fallen on him as being one weighing 350 or 400 pounds. He testified that "Francis had thrown the lariat rope over the calf and had thrown a cinch around the post and had taken some of the slack out of the rope and I was in the act of throwing the calf * * * when Francis let the rope slacken * * *. Q. Was there a rope around the calf's neck? A. Yes, and he was pulling back on the rope. Q. Francis was? A. And the calf too. Q. How much rope was there between the calf and the post? A. Between five and ten feet. * * * When I was in the act of throwing the calf, my brother turned loose of the rope and caused the rope to slacken, and when the rope slackened the calf pulled on the rope—and when the rope slackened the calf came against me and knocked me down." That plaintiff was severely injured is not disputed.

Defendant's first contention is that plaintiff failed to make a submissible case. In the brief defendant's able counsel says: "The questions which arose in the mind of this writer at the trial and yet remain unanswered were, why the rope slip, slacken or come loose? What did defendant do that breached his duty to plaintiff that caused the rope to slip, slacken, or loosen? To these questions there are no answers in the record and for a good reason. Plaintiff was not looking at defendant and he did not know why the rope slackened. He did not and does not know what defendant did to breach the duty owed and neither could this defendant or the trial court or the jury or this court. No one knows why and no one knows what defendant did or failed to do that an ordinary reasonable and prudent man would have done to have prevented the rope from slackening, slipping or coming loose. We might say that he could have held it tighter, but there is no showing that he was not holding it as tight as he could. He might have held it with both hands, but there is no showing that he only held it with one and not both. In short, plaintiff failed to prove specific negligence, and failed to make a submissible issue for the jury."

In considering the question presented we, of course, must view the evidence in a light most favorable to plaintiff and give to him the benefit of every inference that the jury could have reasonably drawn from the evidence. Where the evidence fairly warrants an inference of negligence, it is for the triers of the fact to find whether or not there was such negligence. Fuchs v. St. Louis, 133 Mo. 168, 31 S.W. 115, 34 L.R.A. 118. As said in the case of Krinard v. Westerman, 279 Mo. 680, 688, 216 S.W. 938, 940: "Negli-

gence may be inferred from the facts. If the legitimate inferences which may be drawn from the facts establish negligence, the case of negligence is made."

While defendant did not take the stand in his own behalf, he called as a witness Mr. Ira Hyatt. Mr. Hyatt was 62 years of age, and had been a farmer all of his life. On cross-examination he was asked: "Assume you have a 300 or 400 pound calf and assume the rope is around the post one and a half or one and three quarters turns, would you say a grown man could hold on to the end of this rope and prevent it from slackening or slipping? Mr. Wesner (defendant's counsel) Just a minute, there was some five or ten feet of slack in this rope—Q. Yes, the calf is some five to ten feet from the post, tell the jury whether a grown man could hold to the end of that rope and keep it from slipping on the post? A. He should."

■ Not only did defendant fail to testify at the trial, but he also failed to call his son Roger as a witness. The rule is well settled that the failure of a party having knowledge of facts and circumstances vitally affecting the issues or trial to testify in his own behalf, or to call other witnesses within his power who have knowledge of such facts and circumstances, raises a strong presumption and inference that the testimony would have been unfavorable and damaging to the party who fails to proffer the same. Kame v. St. Louis & S. F. Railroad Co., 254 Mo. 175, 194, 162 S.W. 240; Murrell v. Kansas City St. L. & C. Railroad Co., 279 Mo. 92, 112, 213 S.W. 964; Block v. Rackers, 256 S.W.2d 760, 764. As said by our Supreme Court in State ex rel. Wabash R. Co. v. Trimble, Mo., 260 S.W. 1000, 1003: "'It is a rule of evidence that where one party *raises an inference* by the testimony in his favor and the knowledge of the truth of such inference lies in the knowledge of the other party, *the inference may be taken as a fact, if the other party remains silent and does not rebut it.*'" (Italics ours.)

Plaintiff testified that ever since he was 15 years of age he has assisted in doing the kind of work he was engaged in when injured; that the manner in which it was being done was the "accepted" and "the only satisfactory way" of doing it.

■ In our opinion the jury could reasonably have drawn the inference, from all the facts and circumstances that defendant could, by the exercise of due care, have applied sufficient pressure on the end of the rope he was holding to have prevented the rope from slipping or slackening. That he failed in this respect, and that such failure was the direct cause of plaintiff's injury, we think, is the only legitimate inference justified by the record. Thus the learned trial court did not err in failing to direct a verdict for defendant.

Defendant next contends that Instruction No. 1 given on behalf of plaintiff was erroneous. The basis of defendant's complaint relative to this instruction is that there was no evidence in the record that defendant suffered or permitted the rope to loosen or slacken. The contention is answered by our ruling on defendant's Point 1.

Defendant also asserts that the court erred in giving Instruction No. 2, plaintiff's damage instruction. Defendant says that the instruction "submitted as an element of damage sums expended for hired help without limiting the jury to the amount pleaded when there was evidence in excess of the pleaded amount." The petition specified $300 for this element of damage.

■ It is not necessary for an instruction to specifically limit the jury to the amount asked in the petition in assessing special damages where the evidence does not justify a recovery exceeding the loss pleaded. O'Brien v. Vandalia Bus Lines, 351 Mo. 500, 173 S.W.2d 76. The only evidence in the record pertaining to this issue came from the witness, Frank Repp, who testified that plaintiff had paid him

approximately $300 for work and labor performed during plaintiff's disability. It is true that plaintiff sought by his own testimony to prove an amount in excess of $300 but, upon defendant's objection, was not permitted to do so. Inasmuch as the amount shown to have been expended by plaintiff did not exceed that asked in the petition no error was committed.

■ Defendant also says that the instruction permitted a double recovery because it also authorized the jury to take into account plaintiff's "loss of time and his earning capacity." There was evidence that plaintiff's earning capacity was permanently impaired. Up to the time of the trial, March 22, 1954, he had been able to do "light work". The period of Mr. Repp's employment ended in November, 1952. In the light of the evidence we do not think that the instruction is subject to the construction put upon it by defendant.

Defendant's last point is that plaintiff was guilty of contributory negligence as a matter of law. The following language appearing in the case of Hathaway v. Evans, Mo. App., 235 S.W.2d 407, 411, is clearly applicable to the instant case.

" 'The law is satisfied if individuals conduct themselves with the degree of care usually exercised by a person of ordinary prudence; and, in thus conducting themselves, they are not required to anticipate negligence on the part of others which may result in entailing injury upon them. The court is authorized to declare a plaintiff guilty of contributory negligence, and thus preclude a recovery, as a matter of law, only when it appears that he or she has voluntarily encountered dangers, and assumed a situation fraught with imminent peril to his or her safety, when considered apart from and without the intervention of the negligence of the actor who entails the injury.'

\*   \*   \*   \*   \*   \*

" 'Negligence is ordinarily a question for the jury. It is always so where different minds might reasonably draw different conclusions from the evidence as given. Negligence cannot be conclusively established as a matter of law, upon a state of facts on which fair minded men of ordinary intelligence may differ as to the inferences to be drawn therefrom \* \* \*. Before a court would be authorized to declare a plaintiff guilty of contributory negligence, as a matter of law, the evidence must be such as to permit of no other reasonable conclusion, giving the plaintiff the benefit of every reasonable inference that may be drawn from the evidence in his favor.' "

As stated, the evidence favorable to plaintiff shows that the work was being done in the "accepted" and "only satisfactory way." In the cases of Martin v. Richmond Cotton Oil Co., 194 Mo.App. 106, 120, 184 S.W. 127, and Evans v. General Explosives Co., 293 Mo. 364, 380, 239 S.W. 487, 493, it is said: "Contributory negligence may be rebutted by showing that the thing done was customary or was done in the customary manner \* \* \*."

And, in the case of Rogers v. Tegarden Packing Co., 185 Mo.App. 99, 170 S.W. 675, 677, the court said that where there is but one way to do a given act, and where it is claimed that way is dangerous, then, in determining whether the actor was guilty of negligence as a matter law, the court would have to decide that "the act to be done was so glaringly dangerous that no ordinarily careful person would take the chances in performing it."

■ Giving the plaintiff the benefit of every reasonable inference that may be drawn from the evidence in his favor precludes us, we think, from saying that he was negligent as a matter of law.

Finding no error in the record prejudicial to defendant, the judgment is affirmed. All concur.