GLEESON v. THE EXCELSIOR MANUFACTURING COMPANY, *Appellant.*

1. **Negligence**: DANGEROUS PREMISES: CONTRIBUTORY NEGLIGENCE. Plaintiff cannot recover for the death of her husband, occasioned by falling through a hatchway in defendant's manufactory, when it was a part of his contractual obligation to close such hatchway when left open, and when, at the time of the accident, it was well lighted by gas jets burning near it, and he had a lighted lantern in his hand. He was guilty of such contributory negligence as to preclude a recovery.

2. ———: ———: ———. Where the negligence of the injured party is the proximate cause of the injury, there can be no recovery. And if the deceased, knowing that the hatchways were unguarded, voluntarily entered into the employment of defendant and continued in it, agreeing, as a part of his undertaking, to close the hatchways when left open, he took upon himself all the risks incident to the employment.

*Appeal from St. Charles Circuit Court.*—HON. W. W. EDWARDS, Judge.

REVERSED.

*C. P. & J. D. Johnson* for appellant.

(1) There was no evidence tending to show that the injuries to the deceased were the result of negligence upon the part of the defendant. (2) Hence, the facts being undisputed, the case should have been taken from the jury. *Powell v. Railroad*, 76 Mo. 82; *Callahan v. Warne*, 40 Mo. 136; *Maher v. Railroad*, 64 Mo. 267; *Harlan v. Railroad*, 64 Mo. 480; *Buesching v. Gas Light Co.*, 73 Mo. 219; *Nolan v. Shickle*, 69 Mo. 337; *Lenix v. Railroad*, 76 Mo. 90; *Taylor v. Railroad*, 86 Mo. 462. (3) But conceding, for the sake of argument, that defendant was guilty of negligence in maintaining

a hatchway without guards, still it is not liable in this action, inasmuch as deceased was employed to close the hatchway when left open, and knew that it was unguarded, notwithstanding which he continued in the employment, thereby assuming the risks incident to the same. *Davitt v. Railroad,* 50 Mo. 302; *Porter v. Railroad,* 71 Mo. 77; *Price v. Railroad,* 77 Mo. 510; *McDermott v. Railroad,* 87 Mo. 297; *Rains v. Railroad,* 71 Mo. 168; *Dowliny v. Allen,* 74 Mo. 16; *Smith v. Railroad,* 69 Mo. 39; *Porter v. Railroad,* 71 Mo. 66; *Cagney v. Railroad,* 69 Mo. 423; *Siela v. Railroad,* 82 Mo. 439; *Conroy v. Vulcan Iron Works,* 62 Mo. 37.

*A. R. Taylor* and *M. McKeag* for respondent.

(1) If the testimony of plaintiff's witnesses conduced to prove the allegations in plaintiff's petition, but in a slight degree, it was the duty of the lower court to submit the matter to the jury, and not sustain a demurrer to the evidence, and as this court has very properly heretofore said: "In passing upon the demurrer the court will make every inference of fact in favor of the party offering the evidence which the evidence warrants, and which the jury might with any degree of propriety have inferred." *Wilson v. The Board of Education,* 63 Mo. 137. If there was even a substantial doubt, the issues presented by the pleadings and evidence were facts for the jury and a non-suit or demurrer to the evidence was not proper. *Thorpe v. Railroad,* 89 Mo. 650, and cases cited. (2) There was no doubt about the fact that there were no guards around the hatchway at the time the plaintiff's husband was injured. Whether or not this was negligence on the part of defendant was properly submitted to the jury, and upon the same theory by the defendant as that of plaintiff. This waived the error, if error there

was. *Davis v. Brown*, 67 Mo. 313 ; *Holmes v. Braid-wood*, 82 Mo. 610 ; *Thorpe v. Railroad*, 89 Mo. 650.

NORTON, C. J.—Plaintiff sues to recover damages for the death of her husband, John Gleeson, alleged to have been occasioned by the negligence of defendant, in whose employment said Gleeson was, as a night watchman, in a certain building of defendant's in the city of St. Louis. The petition alleges that, as such watchman, while walking over the second floor, in the nighttime, said Gleeson fell through a hatchway and sustained injuries from which he died ; that said injuries were occasioned by the negligence of defendant in constructing said hatchway on a level with the floor, without protecting it by any railing or guard, and in leaving said hatchway open. The answer admits the accident, but denies that it was occasioned by any fault or negligence of defendant, and avers in substance that it was the result of said Gleeson's own negligence and carelessness, and that of his fellow-servants. After two mistrials in the circuit court of the city of St. Louis, the venue of the cause was changed to St. Charles county, where, upon a trial being had, judgment was rendered for plaintiff, from which the defendant has appealed, and assigns for error the action of the court in refusing to sustain a demurrer to the evidence, and in giving and refusing instructions.

The following facts are shown by the evidence : That defendant is a corporation in the city of St. Louis, engaged in the manufacture and sale of stoves ; its foundry or factory is divided up into different apartments, one of which is designated the "mounting department," in which the castings of stoves, which are previously made in another department, called the "moulding department," are finished, and "mounted" into stoves, and then stored away for sale and shipment. This "mounting department" is in a four-story

building, the first floor or basement of which is used for storage purposes, the next floor above for shipping, the next for "mounting" stoves, and the next for storage of stoves. Through these several floors, there are four series of hatchways, five feet by five feet six inches in size, and through these, stoves, castings, etc., are raised and lowered by means of block and tackle arrangements; these hatchways are on a level with the floors, without fenders or guards, but have doors to them hung on hinges so that they can readily be closed and opened. These hatchways were always open during working hours, and Gleeson, the deceased, fell through one of these hatchways, in the floor of the "mounting-room" which had been left open by some one of a gang of five or six men, who had been engaged in raising and lowering stoves through said hatchway, when they quit work.

Sterham testified that he was kind of a boss of these men, but, on cross-examination, stated he had no power to employ or discharge any of the men, he received the same pay as they did, was simply a porter, and had charge of the men as head porter, nothing else; that he had to do the same work as the other parties; that the hatchway was plain enough to be seen by a person approaching it. These hatchmen or porters, and the deceased, were employed by the general manager of the foundry. It also appears that, previous to the employment of deceased, the mounting building had caught fire on two occasions in unaccountable ways, and he was employed as a night-watchman to watch and guard it; that at the time of his employment, the hatchways were not complete, nor had their covers been laid, and south of the fire-wall the floors were not laid, and that deceased, in the discharge of his duties, had for some weeks passed through that portion of the building.

Filley, the general manager of defendant, testified as follows: "I employed the deceased as night-watch-

man in December, 1881; he came down and we walked all over the foundry, I passed the hatch in question with him; we walked from the cellar to the second, third, and fourth floors, and then in the wing running east and west. I told him that his duties would be to guard the building, to be there at least half an hour before the men quit work, to see that the hatches and windows were closed, to guard the place to the best of his ability. I showed him all over the premises, walked all over it from top to bottom. It was the duty of the hatchmen to close the hatches at night, but if they left them open deceased was to close them."

The evidence also shows that there were gangways on each side of the open hatchway, through which defendant fell, of sufficient width to have enabled him to have passed it in safety, that he was well acquainted with its location and surroundings, had seen it repeatedly both open and closed, and had assisted in closing it. It also shows that, at the time he fell through the hatch, there were a number of gas jets burning, giving out a bright light, one witness stating that there were ten or twelve of them, the nearest of which to the hatch was opposite to it and about eleven feet from it. In addition to this light, deceased was furnished with a lantern that burned headlight petroleum oil, and gave a good light, and that, at the time of the accident, he was carrying the lantern in his right hand and fell through the hatch with it in his hand. The evidence is clear that he could have seen the open hatch had he looked or been paying the slightest attention. It is also in evidence that deceased told his physician that he did not know how he came to fall; that it was a part of his duty to see that the hatchways were closed; he also stated to several others, that he could not tell how it happened, and that nobody was to blame but himself, and to others he said he looked out to the windows and to the lights and fell through the hatch.

Gleeson v. The Excelsior Mfg. Co.

In view of the facts above stated, from which it appears that it was a part of the contractual obligation of deceased and his duty to close the hatchways in this building when left open, he was guilty of such negligence as precludes a recovery, in not looking to ascertain whether the hatchway through which he fell was open, especially when by looking, with a lantern in his hand giving forth a bright light, and ten or twelve gas jets burning brightly in close proximity to said hatchway, he could not have failed to see that the hatch was open. In view of these facts, and the further fact that he was fully informed that there were no guards around these hatchways, and of all the surroundings, and the duty imposed upon him of closing the hatchways when left open was to be performed without any such protection, the court erred in overruling defendant's demurrer to the evidence and submitting the case to the jury, and this we say on the authority of the following cases, where it is held that if the negligence of the injured party is the proximate cause of the injury, there can be no recovery, and also in effect held that if deceased, knowing that the hatchways were unguarded, voluntarily entered into the employment of defendant with this knowledge, and continued in it, agreeing, as a part of his undertaking, to close the hatchways when left open, he took upon himself all the risks incident to the employment. *Taylor v. Railroad*, 86 Mo. 458, and cas. cit. ; *Price v. Railroad*, 77 Mo. 508 ; *Keegan v. Kavanaugh*, 62 Mo. 232 ; *Porter v. Railroad*, 71 Mo. 67.

For the error noted the judgment will be reversed. All concur, except Judge Ray, absent.