MATTIE MARTIN, Respondent, v. RICHMOND COTTON OIL COMPANY, Appellant.

Springfield Court of Appeals, May 22, 1916.

1. ACTIONS: Pendency of Other Action: Abatement. Pendency in the Federal court of another action removed to such court from a State court is pleadable in abatement of a subsequent action in the State court between the same parties for the same cause. Yet if the suit in the Federal court has been terminated by a non-suit or dismissal before the trial of the plea in abatement, that is sufficient to prevent abatement.

2. DISMISSAL AND NONSUIT: Discretion of Court. The dismissal of a case is a matter within the discretion of the court and the dismissal is not final till such discretion is exercised by the court.

3. ———: ———: The dismissal of a case in vacation either with or without the payment of the costs, or even in term time, is so far held in the breast of the court, at least until the end of the succeeding or current term, that same may be set aside or opened up for good cause shown to permit proper proceeding based thereon to be had and to protect intervening rights.

4. ———: Effect of: Voluntary Dismissal. Though a dismissal or an attempt to dismiss, even when accrued costs are paid, is not effective so as to defeat intervening rights of the defendant or third persons, yet such dismissal is, at least when costs are paid, sufficient to terminate the case, so far as the plaintiff is concerned, so as to permit him to bring another suit.

5. ———: Payment of Costs: Provision for Whose Benefit. The provision as to paying costs on dismissal in vacation is for the protection of the court officers and witnesses rather than the defendant against whom no judgment is rendered.

Martin v. Cotton Oil Co.

6. ———: **Plaintiff's Right to: Effect of: Defendant's Rights.** Sec. 1980, R. S. 1909, gives the plaintiff an absolute right to take a non-suit at any time before the final submission of the case. But such dismissal or nonsuit applies to plaintiff's cause of action and does not dispose of rights of the defendant which may have become fixed.

7. **ABATEMENT AND REVIVAL: Reasons for Rule as to Abatement.** The reason for the rule that a second suit will be abated so long as the first is yet pending is that the second suit is unnecessary, vexatious and oppressive.

8. ———: **Pendency of Another Action: Court's Discretion.** Where a second suit is only technically pending, being terminated so far as plaintiff is concerned, the court may in its discretion over-rule a plea in abatement on the ground of pendency of another action.

9. **ACTIONS: Identity of: Common Law and Statutory Rights.** Action by servant against master for damages because of personal injuries due to alleged negligence of master. The original action, which was brought in time, based plaintiff's right to recover on the failure of the master to observe his common-law duty of providing a safe place for the servant to work, in not guarding dangerous machinery. After voluntary dismissal of this action, a new one was brought alleging that the master had violated the provisions of Sec. 7828, R. S. 1909, in that he had failed to safely guard dangerous machinery. The facts for both causes being the same the mere change from the common-law to the statutory basis for the action did not create a new cause of action so as to bar recovery under the statute of limitations.

10. ———: ———: **Test as to.** The test as to whether a change from a common-law to a statutory liability is or is not a change of the cause of action, depends generally on the question whether the facts essential to constitute the cause of action are the same or different in the two pleadings rather than whether the pleader intended the one law or the other to apply.

11. **REMOVAL OF CAUSES: Jurisdictional Amount Conferred by Amendment: Right of Removal Not Lost.** Plaintiff sued in the State court for less than the amount authorizing a removal to the Federal court and after the ordinary time for removal had elapsed, was allowed to increase the amount sued for by amendment to above such amount. No question of fraud was raised and the right of removal was not lost if timely application had been made after the amendment.

12. **MASTER AND SERVANT: Safeguarding Machinery: Master's Duty: Jury Question.** Action for death of plaintiff's husband, the injuries which resulted in death having been received while deceased was engaged in feeding cotton seed into a screw con-

veyor. Evidence examined and *held* sufficient to sustain a finding that the conveyor was not sufficiently and properly guarded and that the master was liable for the injuries which servant received by falling into the conveyor.

13. ――――: ――――: **Contributory Negligence: Evidence.** Action for death of plaintiff's husband due to alleged negligence of master in not properly safeguarding machinery. Evidence of alleged contributory negligence examined and considered not sufficient to bar recovery as a matter of law.

14. ――――: **Injuries to Servant: Negligence: Contributory Negligence.** In an action by a servant against the master based on the negligence of master and defended on the ground of contributory negligence on the part of the servant, the burden is on the master to show such alleged contributory negligence in order to defeat servant's recovery.

15. **NEGLIGENCE: Contributory Negligence: How Rebutted.** Contributory negligence may be rebutted by showing that the thing done was customary or done in the customary way, especially when such custom is observed by the master.

Appeal from Dunklin County Circuit Court.—*Hon. W. S. C. Walker*, Judge.

AFFIRMED.

*Oliver & Oliver* for appellant.

*Ely, Pankey & Ely* and *Fort & Fort* for respondent.

STATEMENT.—This is an action for damages in which the plaintiff recovered a judgment for $6250 and defendant appeals. The plaintiff's husband was killed in a cotton seed oil mill while in the employ of defendant on December 17, 1912. The widow appropriated the action and filed her petition in the circuit court within six months thereafter, to-wit: April 3, 1913. In that petition, called the original petition, she bases her cause of action upon the alleged negligent failure of the defendant to furnish the deceased a reasonably safe place in which to work. The damages alleged were $10,000.

The defendant appeared on the first day of the June term, 1913, and filed its petition for removal to.

the Federal court, which was granted and the cause so removed. The cause was continued from term to term in the Federal court till September 7, 1914, when, in the vacation of the court, plaintiff filed with the clerk of the Federal court a praecipe or memorandum to dismiss said cause but did not then, nor has she since, paid the costs then accrued.

The clerk of the Federal court entered an order in vacation of said court as follows: "Now at this day comes the said complainant by her attorney and files a praecipe dismissing this cause, which praecipe is in words and figures as follows, to-wit: 'Now on this 7th day of September, 1914, comes the undersigned attorney for plaintiff in the above entitled cause and dismisses said cause at the cost of plaintiff. Signed T. R. R. Ely, attorney for plaintiff.'" No subsequent action was taken by the court in term time or at any other time.

Prior, however, to the making of the above order in the Federal court, and on April 30, 1914, the plaintiff filed a second suit in the circuit court based upon the alleged negligent failure of the defendant to comply with section 7828, Revised Statutes 1909, requiring defendant to safely guard the machinery of its plant. Plaintiff voluntarily dismissed this suit December 14, 1914.

The plaintiff had also filed on September 11, 1914, her third petition, the one now in controversy. It is based on the alleged negligent failure of the appellant to safely guard its machinery as required by said section 7828, Revised Statutes 1909. The damages alleged when this petition was filed were $2999, one dollar less than the amount sufficient to give the Federal court jurisdiction. On this third petition, after amendment, the case was tried. Before trial the court permitted an amendment increasing the damages to $10,000.

Thereafter appellant, on December 4, 1914, limiting its appearance, filed its motion to dismiss said third petition for the reason that the cause of action attempted to be stated constituted a departure from the original petition in that the original petition based its

cause of action upon the alleged failure of appellant to furnish the deceased a reasonably safe place in which to work while the third petition was based upon an alleged failure of the appellant to safely and securely guard its machinery as provided by statute, section 7828, supra; that the third petition was not an amendment or continuation of the original suit and that therefore the same should be dismissed; and for the further reason that being a new cause of action the same was barred by the Statute of Limitations, having been filed more than one year and eight months after the accident complained of occurred. This motion was overruled.

After the amendment increasing the amount of damages to $10,000 the defendant moved to strike out the same, alleging that the court was without jurisdiction; that the permitting of the amendment would have the effect of defeating justice and would be in contempt of the Federal court in defeating the jurisdiction of said court and permitting the plaintiff to do indirectly what he could not do directly. This motion was overruled.

Thereupon the defendant, still limiting its appearance, filed its answer, containing six counts: (1) that there is a departure from the original suit and that the present suit is a wholly separate and distinct cause of action requiring different proofs to sustain the allegations in the two petitions, and that the measure of damages is entirely different; that the present suit is barred by the Statute of Limitations; (2) that the original suit is still pending in the United States District Court and has never been dismissed, and that this suit should be abated; (3) a general denial except admitting defendant's incorporation under the laws of Tennessee; (4) that if deceased was injured he was not injured in the performance of any duty imposed upon him by the appellant; that he had specific duties to perform at a fixed place in the plant and that the performance of his duties did not require that he should be at the place where injured; (5) contributory negligence on the part of deceased; (6) that defendant had complied with section 7828, Revised Statutes 1909, in fully and completely guarding the exposed machinery in so far as possible,

and that deceased refused to use the safety appliances provided for his use.

Plaintiff demurred to the first, second, third and fourth defenses and the court sustained the same as to the first and second.

## OPINION.

STURGIS, J.—I. Preliminary to any discussion to the merits of the case, we will dispose of defendant's insistence that its plea in abatement should have been sustained on the ground of another action pending in the Federal court. The plaintiff concedes that the present suit is for the same cause of action as that removed to the Federal court and her right to maintain this suit as against the special Statute of Limitations of one year is dependent on the fact that this suit was instituted within such time after the dismissal of such former suit. It is also conceded that the pendency in the Federal court of an action removed to such court from a State court is pleadable in abatement of a subsequent action in the State court between the same parties for the same cause unless the suit in the Federal court has been determined by a voluntary nonsuit or dismissal, in which case the second suit may be maintained. [1 C. J. 89 and cases cited.] This rule of law is modified in this State to the extent that, if the first suit is terminated by nonsuit or dismissal before the trial of the plea in abatement, that is sufficient. [Warder v. Henry, 117 Mo. 530, 23 S. W. 776; State ex rel. v. Hines, 148 Mo. App. 298, 304, 128 S. W. 250.]

Defendant's point is that there was no dismissal of the suit in the Federal court in that the vacation order above set out is ineffectual to accomplish that result, though evidently so intended and relied on by plaintiff. The defendant relies on our statute, section 1979, Revised Statutes 1909, as governing the practice in the Federal court sitting in this State, and which provides that suits may be dismissed by plaintiff in vacation "upon payment of all costs that may have accrued thereon." It is conceded that plaintiff did not pay the

costs. It was also shown, though this evidence was excluded as not being material, that when plaintiff applied to the clerk of the Federal court to dismiss this case, the form of praecipe signed by plaintiff's attorney was furnished by the clerk and that the practice in that court on dismissals in vacation is similar to what was done in this case; that no costs were demanded as a condition of making the order; that at least one term of the Federal court was held after the dismissal and before this trial at which such case did not appear on the docket in the Federal court as a live case, which fact must have been known to and acquiesced in by both parties.

The defendant cites, as sustaining its position that the dismissal of a case is a matter within the discretion of the court and that the dismissal is not final till such discretion is exercised by the court, the remarks of Judge ROMBAUER in Campbell v. Carroll, 35 Mo. App. 640, 645, as follows: ''We are informed that a practice has grown up in this State sanctioning the dismissal of suits in vacation, by the plaintiffs' filing a memorandum with the clerk, but such memorandum necessarily goes for naught except as evidence of an estoppel by matter *in pais*, or abandonment, unless the court, by some appropriate entry of record at a succeeding term, gives effect to it as a judgment. The court alone is competent to order a judgment and not the parties litigant or the clerk. It would be a strange anomaly, if the plaintiffs in an injunction suit could escape all liability upon their bond, by a simple memorandum of dismissal filed with the clerk in vacation.'' These remarks must be taken, however, in connection with the subject there in hand, to-wit: Whether a dismissal in vacation of an injunction proceeding is such a final disposition of the case as to prevent an assessment of damages on the injunction bond at the succeeding term. The negative was held and such would be true whether the dismissal in vacation was accompanied with the payment of costs or not. Obviously any dismissal of the case in vacation either with or without payment of costs, or in term time for that matter, is so far held in the breast of

the court, at least until the end of the succeeding or concurrent term, that same may be confirmed, or set aside or opened up for good cause shown, and so far as to permit any proper proceeding based thereon to be had. That the court might have taken any proper action looking to the collection of the costs in this case **we** may concede. We think defendant will concede that, although every dismissal or attempt to dismiss, even when accrued costs are paid, is not effective so as to defeat intervening rights of the defendant or third persons, yet such dismissal is, at least when costs are paid, sufficient to terminate the case so far as plaintiff is concerned and thereby enable him to bring another suit. Is the payment of costs at the time the order of dismissal is made essential to accomplish this result? There might be a dispute as to the amount of costs due or the same might not be yet determinable or the parties to whom due may be willing to forego the same or give further time. It would appear that the provision as to paying costs on dismissal in vacation is for the protection of court officers and witnesses rather than the defendant against whom no costs are adjudged. [Bradford v. Railroad (Ga.), 65 S. E. 127.] The fact that the court so far retains jurisdiction and control of the case as to enforce collateral rights of the defendant or third parties or even of the plaintiff himself growing out of the first suit, is not inconsistent, we think, with the right of plaintiff to prosecute a new suit to enforce his cause of action. This seems to be the more reasonable because our statute gives the plaintiff an absolute right to take a nonsuit at any time before the final submission of the case. [Section 1980, R. S. 1909.] Such dismissal or nonsuit applies only to plaintiff's cause of action and does not dispose of rights of the defendant which have become fixed. [State ex rel. v. Hines, 148 Mo. App. 298, 305, 128 S. W. 250; Lanyon v. Chesney, 209 Mo. 1, 106 S. W. 522; Pullis v. Pullis, 157 Mo. 565, 57 S. W. 1095.]

Going to the reason of the rule that a second suit will be abated so long as the first is yet pending, the

194 M. A.—8

authorities all agree that it is because the second suit is unnecessary, vexatious and oppressive. [1 R. C. L. 10; 1 C. J. 45; State ex rel. v. Hines, 148 Mo. App. 298, 303.] The court, in Warder v. Henry, 117 Mo. 530, 541, 23 S. W. 776, in justifying its holding that, though our statute makes the fact of another suit pending a ground of demurrer, which strikes at the petition as it is, and if not disclosed in the petition then by answer, yet, if the former suit was actually dismissed before the hearing on such question, that would suffice, said: "The ground on which courts proceed in the abatement of subsequent suits is that they are unnecessary, and are therefore deemed vexatious and oppressive. . . . These decisions of this court show that this statute is not an iron rule. Like many other provisions of the code, it is but declaratory of the common law; and in its application regard should be had to the substantial rights of the parties." The Court of Civil Appeals of Texas, Harby v. Patterson, 59 S. W. 63, 65, speaking of exacting the payment of costs in case of a plea in abatement, said: "All these matters are held to be discretionary with the court, and it is said that the discretion may and ought to be exercised so as to prevent the plaintiff from annoying, harrassing, and vexing the defendant with a multiplicity of suits for the same cause of action." What the court said in Trimble v. Railway, 180 Mo. 574, 586, 79 S. W. 678, goes to the very root of the matter: "Therefore, there can never be any conflict of jurisdiction between the State and Federal courts in this case, and as the reason of the rule underlying the doctrine of prior action pending is, that the defendant shall not be called upon to defend two suits involving the same subject-matter, at the same time, in two different forums, the rule does not apply in this case." In Karnes v. Fire Insurance Co., 53 Mo. App. 438, a nonsuit was taken but no final judgment was rendered disposing of the case. On a second suit being brought and plea in abatement made, the court held that the nonsuit was an abandonment of the cause and was so treated by the parties, and added: "The former case is is ended. The nonsuit taken is irrevocable. . . .

And we see no substantial reason or justice in holding it to be yet pending for the purpose of defendant's plea." This point is ruled against appellant.

II. Is the cause of action sued on in the present suit the same cause of action as that sued on in the former case removed to the Federal court and thereafter dismissed? If not, then plaintiff must fail here for two reasons: (1) The cause of action which plaintiff may again sue for within one year after a dismissal of another suit must be for the same cause of action; and, (2) unless the cause of action now sued for is the same as the other this cause of action is barred by the Statute of Limitations. The question of the identity of the cause of action is decisive of both points.

Briefly stated, the original petition alleged defendant's negligence to consist in not securely and safely covering or guarding the revolving metal conveyor or seed carrier extending along the floor in a trough and over which deceased was required to pass in performing his work, whereby his foot and leg came in contact with same to his injury. This act of negligence was alleged to be in violation of the common-law duty of the master to furnish the servant a safe place to work. The present petition alleges the same negligent act of the master causing the same injury, but alleges the negligent act to be in violation of section 7828, Revised Statutes 1909, requiring the master to safely and securely guard machinery dangerous to employees. The insistence is that this is a change from a common law to a statutory action and therefore a change of the cause of action.

It is certainly not the law in this State since Minter v. Railroad, 82 Mo. 128, that a cause of action cannot be changed from one based on common-law negligence to one based on statutory negligence without working an entire change in the cause of action where the change consists merely in the kind of negligence charged. That case so holds and cited with approval Calvert v. Railroad, 34 Mo. 242, as holding that the cause of action for negligently running over and killing cattle can be sustained by proof of either common law

or statutory negligence; also Goodwin v. Railroad, 75 Mo. 73, as holding that the cause of action for negligence in managing and running a locomotive and cars can be sustained by proofs of failure to comply with the statute as to ringing the bell and sounding the whistle. Other cases are cited to the same effect. These cases, it is true, originated in the justice court and there was no question of pleading. But the same cause of action and no other can be tried in the circuit court on appeal from the justice court and the Minter case pointedly decides that it is the same cause of action whether the negligence is common law or statutory. This case is followed in Rippee v. Railroad, 154 Mo. 358, 363, 55 S. W. 438, where the court held that the cause of action was the killing of plaintiff's cow by the negligent running of defendant's train with an attempt to specify two grounds of negligence, one being a failure to sound the bell or whistle while running at a high rate of speed through a village. This is common-law negligence. [Hudson v. Railroad, 173 Mo. App. 611, 617, 629, 159 S. W. 9, and cases cited.] But the court held that an amendment changing to the statutory negligence of failure to ring the bell or sound the whistle at eighty rods before reaching the public crossing did not change the cause of action. In the Hudson case, supra, this court, on motion to modify the judgment, page 611, expressly held that a petition for damgaes based on statutory negligence could be amended so as to charge common-law negligence without changing the cause of action. [See, also, Schell v. Railroad, 132 Mo. App. 528, 112 S. W. 39.]

The various modern tests for determining when the identity of the cause of action is preserved by new or amended pleadings are stated in Stewart v. Horne, 91 Mo. App. 647, 655; Walker v. Railroad, 193 Mo. 453, 457, 92 S. W. 83; Ingwerson v. Railroad, 150 Mo. App. 374, 381, 130 S. W. 411; Thornton v. Smelting Co., 178 Mo. App. 38, 47, 163 S. W. 293; and judged by the tests there stated, the cause of action stated in the two petitions now in question is the same.

Without reviewing the cases cited by defendant holding that a change from law to law, from common law to statutory actions, works a change in the cause of action, we suggest that a line of cleavage will be found on determining whether what is termed statutory negligence creates a new kind of negligence, as liability for negligence of a fellow servant (Union Pacific Railway Co. v. Wiler, 150 U. S. 285), or merely enlarges or makes definite or arbitrary some particular kind or act of existing common-law negligence. In the latter case a change from one to the other leaves the cause of action intact. Thus, as we have noted, it is common-law negligence for a fast moving train to cross a public highway without giving timely and effective warning, while the statute arbitrarily fixes both the distance and kind of warning to be given. Also it is negligence at common law to run a car or train at an excessive rate of speed along or across streets or alleys where people are apt to be found (Hardwick v. Railroad, 168 S. W. 328), while statutes and ordinances fix arbitrary rates of speed, beyond which the speed is negligence *per se.* So also it is negligence at common law to leave machinery so uncovered or unguarded as to make the servant's place of work not reasonably safe, while the statute enlarges such negligence so as to make it negligence *per se* not to safely and securely guard all machinery designated by the statute when same is dangerous and can be so guarded. A change from the common-law measure of negligence to the statutory one in such cases, when preserving the identity of the resulting injury and measure of damages, is not a departure.

The question of whether a change from law to law is or is not a change of the cause of action depends at times on the question whether the facts essential to constitute the cause of action are the same or different in the two pleadings rather than whether the pleador intended the one law or the other law to apply. On the one hand is Vaughan v. Railroad, 177 Mo. App. 155, 172, 164 S. W. 144; McIntosh v. Railroad, 182 Mo. App. 288, 168 S. W. 821; Carpenter v. Railroad, 189 Mo. App. 164, 175 S. W. 234, and the cases cited in each

holding that there is no change of the cause of action where the facts of liability are the same. On the other hand are Moliter v. Railroad, 180 Mo. App. 84, 94, 168 S. W. 250; McAdow v. Railway Co., 164 S. W. 188, and cases cited, holding that there is a change of the cause of action where the facts of liability are different.

III. The original suit removed to the Federal court was for $10,000 damages. The present one, when filed, was for one dollar less than $3000, the minimum jurisdictional amount authorizing removal to the Federal court. Later the trial court permitted an amendment increasing the damages to $10,000. Error is assigned that this worked a fraud on the Federal court in preventing a removal to such court in that the amendment was made after the time for removal had passed. No authorities are cited, and we ought not to be required to investigate or decide whether a right of removal existed in favor of defendant had it applied for same after the petition for the first time made such right available. It seems, however, that the right of removal had not been lost had defendant applied for same. [Powers v. Railroad, 169 U. S. 92, 42 L. Ed. 672; Barber v. Railroad, 145 Fed. 52; Remington v. Railroad, 198 U. S. 98, 49 L. Ed. 762.]

IV. Turning to the merits of the case, the evidence discloses that deceased was engaged in feeding cotton seed into a screw conveyor, using a fork for that purpose. This conveyor extended lengthwise of the building in a trough along the concrete floor. Over this was constructed a roof-shaped concrete structure forming what is called the "tunnel" with doors or openings ten to twelve feet apart through which the cotton seed was fed to the screw conveyor as needed. The accompanying photograph will make plain the situation and method of operation. (Exhibit 4). The conveyor runs lengthwise in the center of the floor within this tunnel. This tunnel is from ten to twelve feet wide at the base or floor, and about six feet high, so that a man standing or walking therein must do so on the board covering

over the trough in which the screw conveyor turns. The conveyor lacks an inch or two of being flush with the floor and a covering of boards was laid thereon in sections, end to end, the full length of the conveyor. These sections were three or four feet long, and twelve to fourteen inches wide, and had cleats nailed crosswise at the ends which, fitting into the rectangular trough, had a tendency to keep same in place. It is plaintiff's claim that this board covering was insufficient to comply with the statute in safely and securely guarding this conveyor and by reason thereof her husband met his death.

No one saw the accident, but, summoned by his cries of distress, other employees found him in the tunnel with his leg ground off in the conveyor. He was yet conscious and stated that the board slipped and his foot went in there. There is abundant evidence that these boards did not form even a reasonably safe and secure guard over this conveyor. More than one witness states that the boards were frequently misplaced or angling across the trough; that the jar of the conveyor caused them to be shaken off; that the seed falling through the doors would push them up and that too much seed passing through the conveyor would displace them. Witnesses state that these boards were hardly ever all in place and that they had to be frequently replaced. It was also shown that an iron grating or triangular shaped screen, similar to a short section then in use, would be much safer, especially if fastened. The seed would pass through such a covering without its removal and would be practically as efficient in feeding the conveyor as if entirely open. The use of the one section of this screen covering which was then in use was only intended to protect the opening made by removing the board at the place where the seed was being fed to the conveyor; and, though there was evidence that the deceased refused to use it, yet its use would in no way have protected the place where deceased was hurt. The whole length of the conveyor should have been so covered.

It is true that the deceased was not hurt at his place of work in feeding the cotton seed into the conveyor with a fork. He was hurt at a point some twenty-five feet therefrom and was evidently passing through the tunnel, walking on this board covering—the only place he could walk in so doing. In explanation of his passing through the tunnel at this time, it was shown that there was an ''overflow,'' which means that an excessive amount of cotton seed had accumulated where it was being conveyed, and a signal had been given him to stop feeding. The deceased then passed out of his workroom and was last seen in the nearby engine-room, where he went for a drink of water. The evidence justified a finding that he was returning to his work through the tunnel, or went therein from his place of work to the place of the accident in connection with his work. There is evidence that this tunnel was used frequently as a means of ingress or egress to and from the seed house where deceased worked; that the ends of the tunnel were left open for that purpose and that no other way as convenient was available. It is difficult to understand what means were provided for ingress and egress to and from this building. The witnesses speak of a high opening reached by a ladder and of a board being off leaving a ''crack'' used for that purpose. As the house was frequently full or nearly full of seed, any ordinary doors would be clogged. In any event, the burden was on defendant to show contributory negligence and such question was at most one for the jury under the facts here. Contributory negligence may be rebutted by showing that the thing done was customary or done in the customary way, especially when such custom is observed by the master. [Overby v. Mining Co., 144 Mo. App. 363, 128 S. W. 813; Brunke v. Telephone Co., 115 Mo. App. 36, 90 S. W. 753; 29 Cyc. 517; 21 Enc. Law (2 Ed.), 524.]

It was deceased's duty to replace only the boards removed by him or such as came under his observation. He was not employed to regularly inspect and keep the board covering in place. The case of Gleeson v. Manufacturing Co., 94 Mo. 201, 7 S. W. 188 is not in point.

Other alleged errors have been noticed, but their discussion would only prolong the opinion.

Finding no reversible error, the judgment is affirmed. *Robertson, P. J.,* and *Farrington, J.,* concur.