D. E. COLE, RESPONDENT, v. AMERICAN RAILWAY EXPRESS COMPANY, A CORPORATION, APPELLANT.—68 S. W. (2d) 736.

Springfield Court of Appeals. February 20, 1934.

*A. M. Hartung, Allen McReynolds* and *Newell Blair* for appellant.

*Foulke & Foulke* for respondent.

ALLEN, P. J.—This action was commenced July 27, 1929, before S. W. King, a justice of the peace in McDonald county. Judgment by default was rendered for plaintiff August 12, 1929. The cause was appealed to the Circuit Court of McDonald County. On August 23, 1932, by stipulation, the cause was transferred to Newton county circuit court, where on October 19, 1932, plaintiff was permitted to amend his petition by striking out the words "negligently and carelessly." A jury upon a trial, rendered a verdict for the plaintiff for $50. The petition omitting the words stricken out, is in substance as follows:

"That on October 24, 1927, and after said hog had been accepted for transportation by said defendant, the defendant by its agent and servants . . . let the crate, in which said hog was held and while said hog was so confined in said crate, remain in the hot sun for a long period of time before loading, where the said hog was subjected to torments by children, who were permitted by the servants and agents of the defendant to punch said hog with sticks, so that said

hog was so irritated and became so exhausted that while in transit between the points of Anderson, Missouri, and Watts, Oklahoma, the said hog did die, to the damage of the plaintiff in the sum of $100 for which he asks judgment."

Before the trial was begun appellant offered the following exception:

"We except to the action of the court in permitting the plaintiff to strike out the words 'negligently and carelessly' in plaintiff's petition, for the reason that it constitutes an entire change of action."

Upon which the court stated that "by reason of the permission given plaintiff to amend his cause of action, by striking out the words 'negligently and carelessly' that the defendant if in any way not prepared for trial, an opportunity will be given upon the application to this court for continuance." No such application appears in the record, upon which the parties proceeded to trial of the cause.

The facts disclosed by the evidence were substantially as follows:

The respondent, on October 24, 1929, between four and six o'clock P. M., brought to appellant's station, at Anderson, in McDonald county, Missouri, for shipment to Stuttgart, Arkansas, a male hog, crated for shipment. When the hog was unloaded at the station appellant's agent was not present and did not appear for about an hour thereafter, during which time the hog was left on the station platform. When the agent of appellant arrived the crate was removed from the west platform to the inside, where it was left for a while and afterwards set out on the east platform, where later in the evening, about eight o'clock, it was loaded on the train. The day had been very hot. For some time after the hog was left at the station it was in the sun.

Shortly before the train arrived, the evidence showed that there were some boys bothering the hog, by running around the truck, jumping on and off. There was nothing on the truck besides the hog and the boys, as they jumped on and off.

A deputy State veterinarian, for appellant, examined the hog the next day after its death, and stated that its death was caused by pneumonia; that he could have contracted the trouble and died therefrom, within the space of two hours. That what is ordinarily called overheating is often acute pneumonia. That if the hog had been teased by boys punching it with sticks, while it was in the crate it would excite it and make it hot.

The evidence showed that when the hog was loaded into the express car, at Anderson, Missouri, it was hot and agitated. The express messenger placed the crate in the car door. The run from Anderson, Missouri, to Watts, Oklahoma, was about sixty miles, and it required about an hour and forty-five minutes to make the run. The hog died en route and was unloaded at Spiro, Oklahoma.

The assignments of error by appellant and our conclusions thereon, are as follows:

1st: Appellant urges that it was error to permit plaintiff, in the circuit court, to strike from his statement, upon which the cause was tried in the justice court, the words "carelessly and negligently," which appellant insists was a change of the cause of action.

To this contention we cannot agree, since the elimination of the words "carelessly and negligently" from the statement, left remaining in plaintiff's statement the charge that defendant, by its agents and servants allowed the crate in which the hog was held and confined, to remain in the hot sun for a long time before loading and after its removal to shade, where it was subjected to teasing and tormenting, inflicted by children, who were permitted by defendant to jump on and off the truck upon which the hog was loaded and to punch the hog with sticks so that it became irritated and exhausted, and while in transit died.

The evidence was that the crate when loaded in the express car, which was traveling south, was placed on the north side of the car door, to get the breeze, which, because of the heated condition of the hog, resulted in pneumonia, from which his death occurred within about an hour and a half after the departure of the train from Anderson.

The question, therefore, upon the first assignment of error is, did the circuit court err in permitting the plaintiff to strike out of his statement the words "carelessly and negligently," and did that result in a change of the cause of action? Section 2360, Revised Statutes 1929, provides that: "In all cases of appeal, the bill of items of the account sued on or filed as a counterclaim or set off, or other ground of defense filed before the justice, may be amended upon appeal in the appellate court, to supply any deficiency or omission therein, when by such amendment substantial justice will be promoted, but no new item or cause of action not embraced or intended to be included in the original account or statement shall be added by such amendment. . . ." The courts have universally held that "This statute is remedial and should be given a liberal construction."

"The amended statement still charges the same general cause of action. . . .

"It was not the introduction of an entirely new cause. . . . As long as the plaintiff adheres to the contract or injury originally declared upon an alternation of the modes in which the defendant has broken the contract or caused the injury, it is not an introduction of a new cause of action. If the amendment is merely the same matter, more fully or differently laid to meet the possible scope of the testimony it is not a change of the cause of action. [Rippee v. K. C., Ft. Scott & Memphis Ry. Co., 154 Mo. 358, 1. c. 363-495, 55 S. W. 438.]

"In the case at bar, the cause of action under the amended petition was the identical cause of action counted on the original. It substantially required the same *quantum* and quality of evidence,

the measure of damages under each, the amendment did not substantially change the claim or defense. Hence the general identity of the transaction was preserved and we conclude there is no substance in the assignment of error at hand." [Cytron v. Transit Co., 205 Mo. App. 692, 1. c. 702, 104 S. W. 109.]

"A change from the common-law measure of negligence to the statutory one in such cases, when preserving the identity of the resulting injury and measure of damages is not a departure.

"The question of whether a change from law to law is or is not a change of the cause of action, depends at times on the question whether the facts essential to constitute the cause of action are the same or different in the two pleadings rather than whether the pleader intended the one law or the other law to apply." [Martin v. Cotton Oil Co., 194 Mo. App. 106, 1. c. 116, 117, 184 S. W. 127.]

"The test of an allowable amendment has been formulated in the pronouncement that the same evidence and the same measure of damages are the criteria of judging of the allowableness of an amendment.

"But the distinction has been well made that if the test is to be simply that the *quantum* and quality of the evidence should be precisely the same, then the very purpose of allowing any amendments whatever, would be defeated. It has been further said that the quality of the evidence is not so much the question as is the quantity or character of the evidence. . . . The statutory requirement that an amendment 'shall not change substantially the claim or defense' refers to the general identity of the transaction forming the cause of complaint, . . . test applied is, would the recovery on the original complaint be a bar to a recovery on the amended complaint." [Walker v. Railroad Co., 193 Mo. 453, 1. c. 477, 478, 92 S. W. 83.]

In addition to the authorities next before enumerated, we again call attention to the allegations of the original statement referred to as the petition in the justice court, that defendant accepted the plaintiff's hog for transportation and while the hog was in defendant's control for transportation, its agents, knowingly permitted said hog to be tormented by children so that it, by reason thereof, became so irritated and exhausted that while in transit died. The evidence showed in effect, that its death was the result of pneumonia, brought about by being subjected to the cool air of the evening while being conveyed by defendant to the point of destination.

The act might be, and evidently was construed as negligence and carelessness upon the part of defendant's agents, notwithstanding that the words "negligently and carelessly" were voluntarily stricken out by plaintiff. The presence or absence of the word "negligence" could not affect the meaning of the statement, if the facts proven were not in fact negligence, and it is our opinion that the striking therefrom of the word "negligence" had no effect whatsoever upon the actual meaning of the words remaining.

The case of Austin v. Simon et al., 204 S. W. 193, 194, is based upon the following facts: That plaintiff, the owner of an automobile, delivered the same to the defendants for the purpose of having seat covers made for it. While the car was in possession of defendants, one of them while removing it from one floor to another, the elevator slipped and while it slipped the car moved a little forward, striking the side of the elevator and damaging the car. Plaintiff sued defendants in justice court. At the close of the evidence in the circuit court the plaintiff amended his statement to conform to the evidence, by alleging that the defendants "negligently allowed the car to become injured by reason of the fact that the elevator fell, throwing the car against the side of the elevator and injuring it."

"Defendant contended that the original statement was a suit *ex contractu* on a contract of bailment, while the amended statement was one in tort, and therefore when the amendment was made there was a change in the cause of action before the justice. [See Section 7585, R. S. 1909 (now 2358, R. S. 1929).]

"We are unable to agree with this contention. The allegation in the original statement that the defendant allowed the car to become unblocked, etc., under the liberal construction that must be given statements in justice courts, alleged facts constituting negligence, although the word 'negligence' is not used.

"Defendants contend that the statement as amended, alleged specific acts of negligence, and that there was no proof of such negligence. We are unable to agree with this contention. The amended statement alleged that the car was injured by defendants negligently allowing the elevator to fall. This was an allegation of general negligence, and the doctrine of *res ipsa loquitur* applies."

It is therefore our opinion that in the instant case, the striking from the statement or petition of the words "carelessly and negligently" made no difference in the meaning of the statement. The cause and the manner of the injury to respondent's hog was the same, with or without the words stricken.

The defendant's next contention is that the respondent, being under sentence to the penitentiary for a term less than life, had access to the courts only through a trustee. The conditional commutation of plaintiff by the Governor of the State of Missouri, made on the 19th day of July, 1932, three months prior to the date of the trial of this cause, provided that the term of his imprisonment should end on the 19th day of July, 1932, and therein entitled "him to all the rights, privileges and immunities which result by operation of these presents," upon the conditions therein prescribed, all relating to his future conduct.

Section 8518, Revised Statutes 1929, provides as follows:

"The Governor is hereby authorized to grant commutations, paroles

and pardons upon such terms and conditions as he may see fit to impose.".

We do not agree with the contention of appellant that "a person sentenced to the penitentiary for a term less than life loses his civil rights during such time and cannot maintain an action in a court of law, and has access to the courts only through a trustee," unless he be actually imprisoned under such sentence at the time, as specified in Section 12974, Revised Statutes 1929.

It is our opinion that the section last mentioned did not preclude the plaintiff herein from maintaining this suit, in his own proper person, for the reason that he was at time of trial thereof under parole, issued by the Governor of Missouri. Our conclusion is based upon the declaration of the Missouri Supreme Court, in the case of Ward v. Morton, 294 Mo. 408, 1. c. 418, 242 S. W. 966, in which a very clear and logical statement of the law is stated as follows:

"Furthermore, even though application for the appointment of a trustee to represent his estate has been made the court would have been powerless to act for the reason that Section 2297 (R. S. 1919), now Section 12974, Revised Statutes 1929, provides that a trustee may be appointed only 'upon producing a copy of the sentence, duly certified, and satisfactory evidence that such convict is actually imprisoned under sentence. This evidence it would have been impossible for plaintiff to have produced. We are therefore of the opinion, and so hold, that under the circumstances plaintiff was not entitled to the benefit of the statute, providing for the management and administration of the estates of convicts by a trustee appointed for that purpose. The duty devolved upon plaintiff to protect his property."

"In 13 Corpus Juris, 915, the rule is laid down that 'the statutory disabilities' (suspension of civil rights) continue only during the imprisonment."

In the case at bar the respondent, Cole, at the time of the trial in the circuit court, was not actually imprisoned, and it therefore devolved upon him to protect his rights involved herein.

It is insisted by appellant that it is not an insurer of perishable goods as against loss due solely to such cause, and that if the goods are lost or damaged on account of their inherent perishable nature, without fault of the carrier, there is no liability. To that statement of the law we agree, but the facts in the instant case do not support appellant. It was the duty of appellant's agents and servants to use reasonable care to protect the hog, while under its care and in its possession for transportation, which in reason must include permitting meddlesome interference with or mistreatment of the hog by strangers, likely to render it unfit for shipment. The evidence sustains the allegation that boys were permitted by the agents of appellant to torment the hog, so that it became hot, irritated and exhausted prior to loading and thereafter, for that very evident reason, the hog was,

by appellant's agents and servants, so placed in the car as to be subjected to the cool breezes of the evening, thereby causing pneumonia, from which it died in transit. The evidence relating thereto, was heard by the jury from which, under proper instructions, the issues were found for respondent.

While it is true, as urged by appellant, that in an action by a shipper for damages to shipment where shipper pleads specific negligence, he cannot invoke the presumption that arises from damaged conditions of goods on arrival, after delivery in good condition, and the burden on the shipper to prove negligence by reason of such allegation does not shift.

However, from the facts established by the evidence to the satisfaction of the jury, it found a verdict for respondent, from which this court must conclude that the jury found that the agents of appellant failed to perform their duty to protect the hog, from teasing and annoyance by boys, while in appellant's custody, and waiting for loading, which resulted in overheating the hog, by reason of which condition it became subject to pneumonia while in transit and from which, according to the testimony of the veterinarian, who was appellant's witness, it died. Therefore, the burden of proof as to the cause of death of the hog was assumed by respondent and by him established to the satisfaction of the jury. The instructions to the jury were based upon the proof and in our opinion were not contradictory, but on the contrary fairly presented the issue submitted by the evidence.

The judgment is therefore affirmed. *Smith* and *Bailey, JJ.,* concur.